# FOR PUBLICATION





FILED
Nov 06 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER CROSS, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1303-CR-134 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause No. 73D01-0608-FA-22

**November 6, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

In August of 2006, Appellant-Defendant Christopher Cross engaged in the sale of cocaine in Shelby County. As a result of his actions, he was convicted of Class A felony dealing in cocaine, Class A felony possession of cocaine, Class D felony maintaining a common nuisance, Class A misdemeanor resisting law enforcement, Class A misdemeanor carrying a handgun without a permit, and Class C felony carrying a handgun without a permit after felony conviction. Cross was also found to have committed the acts necessary to warrant a sentence enhancement for using a firearm during the commission of a controlled substance offense, and was found to be a habitual offender. Cross was sentenced to an aggregate term of fifty years. Cross's convictions and sentence were affirmed on direct appeal.

On January 31, 2013, Cross and Appellee-Plaintiff the State of Indiana filed a joint petition for post-conviction relief and request for resentencing. The joint petition was granted and, following resentencing, Cross was sentenced to an aggregate term of thirty-eight years. On appeal, Cross contends that the classification of his acts of dealing in cocaine and possession of cocaine as Class A felonies was disproportionate to the nature of his offenses and that he suffered certain double jeopardy violations. We affirm in part, reverse in part, and remand to the trial court with instructions.

**FACTS AND PROCEDURAL HISTORY**

This court's opinion in Cross's prior direct appeal, which was handed down on July 9, 2008, instructs us as to the underlying facts leading to this subsequent direct appeal following

2

resentencing:

> In August 2006, Larry Sizemore assisted the Shelbyville Police Department by setting up a drug transaction involving Sizemore, Cross, and John Mellentine. Sizemore attempted to call Cross, from whom he had bought drugs in the past. When Sizemore reached Cross'[s] voice mail, Sizemore called Mellentine, who told Sizemore he could reach Cross. Mellentine telephoned Cross and told him that Sizemore wanted to purchase $200.00 worth of cocaine.
>
> Cross and Mellentine drove to Sizemore's Shelbyville hotel room. Shelbyville Police Department Officer Bart Smith was parked down the street at [a youth center], which was about 120 feet from the hotel. When Cross and Mellentine arrived at the hotel, Officer Smith radioed the officers that were hiding in Sizemore's hotel bathroom. When Cross pulled a bag of cocaine out of his pocket, the police entered the room and yelled, "Police. Down." Tr. at 120.
>
> Cross reached for his waistband, which led Officer Ed Hadley to believe that Cross was reaching for a weapon. Officer Hadley tackled Cross, and the two men fell on the floor. Cross continued to struggle with the officer and reach for his waistband. After subduing Cross, Officer Hadley felt a gun slide down Cross'[s] leg. A subsequent search of Cross revealed the gun and three grams of cocaine. The State charged Cross with multiple counts. Following a bench trial, the court convicted Cross of all counts and adjudicated him to be an habitual substance offender as well as an habitual offender.
>
> Following the sentencing hearing, the trial court "adopted" the following aggravating circumstances set forth in the presentence report: 1) Cross has a history of criminal behavior; 2) Cross is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; and 3) Cross threatened the life of a witness/co-defendant by means of a letter. Appellant's App. at 46. The court found no mitigating factors, and sentenced Cross to 1) thirty years for dealing in cocaine, 2) thirty years for possession of cocaine, 3) three years for maintaining a common nuisance, 4) one year for resisting law enforcement, and 5) eight years for carrying a handgun without a permit with a prior felony conviction, all sentences to run concurrently. The court enhanced Cross'[s] thirty-year sentence by twenty years for his habitual offender adjudication, for a total sentence of fifty years.

*Cross v. State*, 73A01-0709-CR-427 *1 (Ind. Ct. App. July 9, 2008). On appeal, this court

concluded that the evidence was sufficient to sustain Cross's convictions and that the trial

3

court did not err in sentencing Cross. *Id*. at *2-3.

On January 31, 2013, the State and Cross filed a joint petition for post-conviction relief and request to set the matter for resentencing. In this joint motion, the parties requested the trial court to vacate the habitual offender enhancement. The trial court granted the parties' joint petition and, after a sentencing hearing held on March 1, 2013, resentenced Cross to an aggregate thirty-eight year sentence.

## DISCUSSION AND DECISION

On appeal, Cross contends that the classification of his acts of possessing more than three grams of cocaine within 1000 feet of a youth program center with the intent to deliver as Class A felonies was disproportionate to the nature of his offenses. Cross also contends that he suffered certain double jeopardy violations.

## I. Proportionality of Class A Felony Classification

Cross contends that the classification of his convictions for dealing in cocaine and possession of cocaine as a Class A felonies was disproportionate to the nature of his offenses. "Article I, Section 16, of the Indiana Constitution requires that '[a]ll penalties shall be proportioned to the nature of the offense.'" *State v. Moss-Dwyer*, 686 N.E.2d 109, 111 (Ind. 1997) (brackets in original). In cases such as the instant matter, where the statutory punishment of a single crime is alleged to be constitutionally disproportionate, our analysis is relatively straightforward. *Id*. (citing *Conner v. State*, 626 N.E.2d 803, 806 (Ind. 1993)).

> Indiana courts have consistently supported the proposition that "[t]he nature and extent of penal sanctions are primarily legislative considerations...." *Person v. State*, 661 N.E.2d 587, 593 (Ind. App. 1996), *trans. denied*. Our separation of powers doctrine requires we take a highly restrained approach

4

when reviewing legislative prescriptions of punishments. While legislative decisions do not completely escape review, "judicial review of a legislatively sanctioned penalty is very deferential." *Person*, 661 N.E.2d at 593 (citing *Conner*, 626 N.E.2d at 806). We will not disturb the legislative determination of the appropriate penalty for criminal behavior except upon a showing of clear constitutional infirmity. [*Steelman v. State*, 602 N.E.2d 152, 160 (Ind. Ct. App. 1992)]. As the court stated in *Person*, "When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional." 661 N.E.2d at 592 (citing *Jackson v. State*, 634 N.E.2d 532, 535 (Ind. App. 1994)). A court is not at liberty to set aside the legislative determination as to the appropriate penalty merely because it seems too severe. *Conner*, 626 N.E.2d at 806; *Clark v. State*, 561 N.E.2d 759 (Ind. 1990).

*Id*. at 111-12.

In adopting Indiana Code section 35-48-4-1(a), the General Assembly decreed that a person who knowingly or intentionally possesses cocaine with the intent to deliver commits dealing in cocaine, a Class B felony. However, the offense is a Class A felony if the amount of the drug involved exceeds three grams or the person delivered the drug in, on, or within 1000 feet of a school property, a public park, a family housing complex, or a youth program center. Ind. Code § 35-48-4-1(b). Here, the State alleged and the evidence presented during trial proved that Cross possessed, with the intent to deliver, more than three grams of cocaine within 1000 feet of a youth program center.

In raising the contention that the Class A felony classification for his act of possessing more than three grams of cocaine within 1000 feet of a youth program center with the intent to deal was disproportionate, Cross argues that the crimes of dealing in cocaine and possession of cocaine should not be classified as Class A felonies because the offenses lack

5

the serious physical harm that is inherent in other Class A felony offenses. We disagree.

The Indiana Supreme Court has previously upheld the constitutionality of the "school-zone enhancement," concluding that "the 'violent and dangerous criminal milieu' created by drug dealing and possession is a sufficient rationale to render [the enhancement] constitutional." *Polk v. State*, 683 N.E.2d 567, 571 (Ind. 1997) (quoting *Reynolds/Herr v. State*, 582 N.E.2d 833, 839 (Ind. Ct. App. 1991)). In coming to this conclusion, the Indiana Supreme Court noted that

> [t]he opinions of this Court are filled with tales of drug possession and dealing that spun out of control and erupted into violence. The conclusion is inescapable that the General Assembly believed that possession of cocaine or a Schedule IV controlled substance near a school, distinct from any effort to distribute them there, presented its own dangers to children. In short, it is within the legislature's prerogative to determine that a drug-free zone deters possible spillover effects, and to provide enhanced penalties for controlled substance violations in proximity to schools.

*Id*. Accordingly, the Indiana Supreme Court held that the enhancement is rationally related to a legitimate legislative objective. *Id*. We conclude that this same rationale also applies to youth program centers.

Likewise, the Indiana Supreme Court has also previously upheld the constitutionality of the enhancement for possessing, with the intent to deliver, three grams or more. *See Coleman v. State*, 588 N.E.2d 1335, 1339 (Ind. Ct. App. 1992) (citing *Marts v. State*, 432 N.E.2d 18, 22 (Ind. 1982); *Hall v. State*, 273 Ind. 425, 434-35, 403 N.E.2d 1382, 1388 (1980)). Relying on the Indiana Supreme Court's opinions in *Marts* and *Hall*, in *Coleman*, this court concluded that the Class A felony enhancement for possessing, with the intent to

6

deliver, three grams or more did not violate the proportionality requirement of Article 1, Section 16 of the Indiana Constitution. *Id*. We find no reason to depart from the binding precedent established by *Marts* and *Hall*.

Moreover, we find Cross's claim that the Class A felony classifications should be found to be disproportionate in light of the upcoming overhaul to the criminal classifications and sentencing structure, which has been approved by the General Assembly in House Enrolled Act 1006, to be unpersuasive. The upcoming overhaul to the criminal classifications and sentencing structure is scheduled to take effect on July 1, 2014. Nothing in House Enrolled Act 1006 suggests that the overhaul of the criminal classifications and sentencing structure should apply retroactively. To the contrary, House Enrolled Act 1006 indicates that crimes committed before July 1, 2014, should be charged and sentenced pursuant to the old classifications and sentencing structure. *See* HEA 1006 § 652. This language falls in line with the controlling Indiana precedent that states that courts must sentence defendants under the statute in effect at the time the defendant committed the offense. *See Jacobs v. State*, 835 N.E.2d 485, 491 n.7 (Ind. 2005).

Cross claims that by approving the overhaul, the General Assembly has shown that it believes that the Class A felony classifications were disproportionate because, under the criminal classifications and sentence structure that takes effect on July 1, 2014, dealing in cocaine and possession of cocaine will no longer qualify as the highest level of felonies in Indiana. We disagree. The overhaul of criminal classifications and sentence structure did not only affect drug crimes, but all crimes. As such, we believe that the overhaul represents a

broad "revamp" of Indiana's criminal system, not a statement regarding the proportionality of one singular criminal offense. Cross has failed to demonstrate that the Class A felony classifications of his act of possessing more than three grams of cocaine within 1000 feet of a youth program center with the intent to deliver constitutes a "clear constitutional infirmity," and, accordingly, we reject Cross's proportionality claim.

## II. Double Jeopardy Concerns

### A. Enhancement for Use of Handgun During Commission of Underlying Criminal Act

Next, Cross contends that his conviction for Class C felony carrying a handgun without a license and the sentence enhancement imposed due to Cross's use of a firearm during the commission of the offense of dealing in cocaine violate the Indiana Constitution's Double Jeopardy Clause.

> That Clause, found in Article 1, Section 14 of the Indiana Constitution, "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Two or more offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.* Under the "actual evidence" test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). To determine what facts were used, we consider the evidence, charging information, final jury instructions (if there was a jury), and arguments of counsel. *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind. Ct. App. 2005).

8

*Stewart v. State*, 866 N.E.2d 858, 863-64 (Ind. Ct. App. 2007).  In addition to the situations covered by *Richardson,* the Indiana Supreme Court has "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy" although not covered by the constitutional test set forth in *Richardson*.  *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002).  One of these rules prevents conviction and punishment for both a criminal act and sentence enhancement where the enhancement is imposed for the very same behavior that constituted another crime for which the defendant has been convicted.  *Id*.

In the instant appeal, Cross claims that the prohibition against double jeopardy was violated because he was convicted of carrying a handgun without a license and that his possession of the handgun was also the basis for the five-year sentence enhancement relating to his dealing in cocaine conviction.  Thus, Cross argues that he was punished twice for the same act.  While we agree that double jeopardy principles would prohibit double punishment for merely possessing the handgun in question, we find persuasive the State's claim that the sentence enhancement did not violate the prohibition against double jeopardy because the enhancement was based not only on Cross's possession of the handgun but also on Cross's use of said handgun.

Indiana Code section 35-50-2-13 provides that the State may seek "to have a person who allegedly committed an offense of dealing in a controlled substance … sentenced to an additional fixed term of imprisonment if the [S]tate can show beyond a reasonable doubt that the person knowingly or intentionally: (1) used a firearm; or (2) possessed a: (A) handgun … while committing the offense."  Cross argues that this court should not consider his alleged

9

use of the handgun because the State's theory of separate conduct, *i.e.*, both possession and use, was not presented to the fact-finder through the charging information filed by the State or in the State's closing argument.  In the instant matter, the body of the charging information alleged that Cross possessed a handgun while committing the offense of dealing in cocaine.  The charging information, however, did not limit the State's claim that Cross committed the actions necessary to justify a sentence enhancement under Indiana Code section 35-50-2-13 by listing only the subsection relating to possession of a handgun.  Furthermore, the evidence presented at trial varied from the language contained in the body of the charging information in that it tended to demonstrate that the State believed that the enhancement was proper in light of Cross's use of the handgun in question.

It is well-established that not all variances between a charging information and the proof presented at trial are fatal.  *Daniels v. State*, 957 N.E.2d 1025, 1029-30 (Ind. Ct. App. 2011) (citing *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997)).

> The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:
> "(1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
> (2) will the defendant be protected in the future criminal proceeding covering the same event, facts, and evidence against double jeopardy?"

*Mitchem*, 685 N.E.2d at 677 (quoting *Harrison v. State*, 507 N.E.2d 565, 566 (Ind. 1987)).

Here, the record is devoid of any indication that Cross was prejudiced in the preparation or maintenance of his defense by the variance.  The charging information listed

10

Indiana Code section 35-50-2-13 generally and did not limit the State's allegation that Cross violated the statute to any particular subsection contained therein. Moreover, Cross's defense did not distinguish between possession and use. While Cross's defense did not contain any argument that he possessed but did not use the handgun, nothing in the record suggests that he would have been precluded from doing so. In addition, nothing in the record indicates that Cross could potentially face a subsequent prosecution for his actions relating to the commission of the underlying offenses. As such, we conclude that the variance between the language contained in the body of the charging information and the proof presented at trial was not fatal.

Having determined that the variance between the language contained in the body of the charging information and the proof presented at trial was not fatal, we must next determine whether the evidence is sufficient to support a determination that Cross "used" the handgun while committing the offense of dealing in cocaine. The Indiana Supreme Court has previously held that mere possession of a handgun is not enough to constitute use of said handgun. *See Nicoson v. State*, 938 N.E.2d 660, 665 (Ind. 2010) (providing that mere possession of a firearm is not enough to satisfy the requirement that a defendant used the firearm in the commission of an underlying offense). "Although it appears no Indiana cases have addressed what it means to 'use' a weapon, it seems to be accepted that '[t]he word 'use,' in statutes prohibiting the use of a firearm in the commission of an offense, includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm.'" *Daniels v. State*, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011) (quoting 94

11

C.J.S. Weapons § 37 (2001)).

We conclude that the record demonstrates that Cross did not merely possess the handgun during the commission of the offense of dealing in cocaine but also used the handgun during the commission of said offense. The evidence presented at trial demonstrated that Cross reached for the handgun during a struggle with police. Again, police officers were hiding in the hotel room in which Cross intended to sell cocaine to Sizemore. The officers made their presence known after watching Cross pull a bag of cocaine from his pocket. As the officers made their presence known, Cross reached for a handgun that was located in or around the waistband of his pants. Cross continued to reach for the handgun while he struggled with police in an apparent attempt to avoid arrest. Eventually, the handgun was recovered by one of the officers. We believe that Cross's act of reaching for the handgun in an attempt to evade detention during the commission of the offense of dealing in cocaine moved beyond mere possession of said handgun, and, as a result, is sufficient to demonstrate use of said handgun. Because we conclude that the record contains independent evidence which demonstrates that Cross used the handgun during the commission of the act of dealing in cocaine, we further conclude that Cross was not punished twice for the same behavior.

Moreover, Cross has failed to demonstrate that there is a reasonable probability that the trier of fact, the trial judge, relied on the same evidence to establish the essential elements of both the carrying a handgun without a license charge and the use enhancement. As is stated above, the trial judge was presented with independent evidence that Cross used the

12

handgun during the commission of his act of dealing in cocaine. Because the trial judge was presented with independent evidence to support Cross's conviction and the sentence enhancement, we find no reasonable possibility that the evidentiary facts used by the trial judge to establish the essential elements of carrying a handgun without a license were also used to establish the sentence enhancement for use of a handgun during the commission of his act of dealing in cocaine. Any such possibility would be speculative and remote. *See Thy Ho v. State*, 725 N.E.2d 988, 992 (Ind. Ct. App. 2000) (providing that because we presume that the trial judge knows the law and considers only the evidence properly before the court in reaching a decision, any possibility that the trial judge used the same evidence to establish the essential elements of both theft and robbery would have been speculative and remote). Cross, therefore, has not met his burden to establish an Indiana double jeopardy violation in this regard. *See id.* Accordingly, Cross's sentence for carrying a handgun without a license and the sentence enhancement for using said handgun during the commission of the act of dealing in cocaine did not violate the prohibitions against double jeopardy.

### B. Lesser-Included Offense

Cross also contends that his conviction for Class A misdemeanor carrying a handgun without a license should be vacated. Cross was convicted of both Class C felony and Class A misdemeanor carrying a handgun without a license. The State concedes that Class A misdemeanor carrying a handgun without a license is a lesser-included offense of the Class C felony. Accordingly, the State concedes that Cross's conviction for the lesser-included Class A misdemeanor conviction must be vacated. *See* Ind. Code § 35-38-1-6 (providing that

13

judgment and sentence may not be entered against a defendant for the included offense whenever the defendant is charged with and convicted of both an offense and an included offense in separate counts).

## CONCLUSION

In sum, we reject Cross's contention that the classification of Cross's acts of dealing in cocaine and possession of cocaine as Class A felonies was disproportionate to the nature of his offenses. With regard to his use of a handgun during the commission of the dealing offense, we conclude that Cross was not punished twice for the same act in violation of the prohibitions against double jeopardy. We also conclude that Cross's conviction for the lesser-included offense of Class A misdemeanor carrying a handgun without a license must be vacated. As such, we affirm in part, reverse in part, and remand to the trial court with instructions to vacate the conviction for Class A misdemeanor carrying a handgun without a license.

The judgment of the trial court is affirmed in part, reversed in part, and the matter remanded to the trial court with instructions.

BAILEY, J., and MAY, J., concur.