## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 18 2015, 5:27 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Richard Denning
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan M. Burton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 18, 2015

Court of Appeals Case No.
33A01-1501-PC-5

Appeal from the Henry Circuit Court

The Honorable Mary G. Willis, Judge

Cause No. 33C01-1303-PC-002
formerly:   33D01-0908-FA-004

**Friedlander, Judge.**

[1]   Ryan Burton appeals from the trial court's denial of his petition for post-conviction relief.  Burton presents the following restated issues for review:

1.  Did Burton receive ineffective assistance of trial counsel during sentencing?

2. Is the savings clause in the new criminal code vindictive, in violation of article 1, section 18 of the Indiana Constitution?

3. Is Burton's sentence disproportionate in violation of article 1, section 16 of the Indiana Constitution merely because the new criminal code and the prescribed penalties do not apply to him?

We affirm.

On March 24, 2009, Burton, then eighteen years old, delivered OxyContin[1] pills belonging to his mother to an undercover Drug Task Force Officer. The transaction occurred within 1000 feet of Country Park Apartments, a family housing complex. On or about June 2, 2009, Burton again sold oxycodone to an undercover officer.

On August 24, 2009, the State charged Burton with Count I, dealing in a schedule II controlled substance[2] as a class A felony and Count II, dealing in a controlled substance, a class B felony. On June 3, 2010, Burton entered into a plea agreement with the State in which he agreed to plead guilty to Count I and in exchange, the State agreed to dismiss Count II. With regard to sentencing,

---

[1] OxyContin is a brand name for oxycodone, a schedule II controlled substance. *See* Ind. Code Ann. § 35-48-2-6(a), (b)(1)(O) (West, Westlaw 2009).

[2] Ind. Code Ann. § 35-48-4-2(a)(1)(C), (b)(2)(B)(iii) (West, Westlaw 2009). Effective July 1, 2014, this specific offense was repealed. *See* I.C. § 35-48-4-2(a)(1)(C), (c-f) (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015); I.C. § 35-48-1-16.5 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015) (omitting "within one thousand (1,000) feet of . . . a family housing complex" as an enhancing circumstance).

the plea agreement provided for a cap of twenty-five years and also provided that Burton waived his right to appellate review of the sentence imposed.[3]

[5] The trial court held a sentencing hearing on August 10, 2010. In his statement to the court, Burton admitted that he had been helping his mother illegally sell prescription drugs since he was fourteen years old. In addition, the court noted that at the age of sixteen, Burton committed the offense of child molesting, which would be a class B felony if committed by an adult, and was subsequently adjudicated a delinquent. Prior to pronouncing the sentence, the trial court identified two aggravating factors: (1) Burton's adjudication for class B felony child molesting and (2) Burton's admission that during the time he was on probation, he participated in the conduct that led to the current offense. The court noted as mitigating that Burton had pleaded guilty and his young age. Finding that a mitigated sentence was warranted, the trial court sentenced Burton to twenty-two years with ten years suspended, five of which to be served on formal probation and two to be served on informal probation.

[6] Burton, pro se, filed a petition for post-conviction relief on March 14, 2013. On September 15, 2014, Burton, this time by counsel, filed an amended petition for post-conviction relief. The post-conviction court held a hearing on November 12, 2014. The post-conviction court entered its findings of fact and conclusions

---

[3] At the time of the offense, the sentencing statute for class A felonies provided for an advisory sentence of thirty years. *See* Ind. Code Ann. § 35-50-2-4 (West, Westlaw 2009). The plea agreement therefore called for a mitigated sentence by setting a sentencing cap at twenty-five years.

of law denying Burton post-conviction relief on December 15, 2015. Burton now appeals.

[7] In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. at 1138 (*quoting Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 1138 (*quoting Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

1.

[8] Burton first argues that he received ineffective assistance of counsel because his counsel failed to present mitigating evidence at sentencing. Specifically, Burton argues that his counsel failed to investigate and explain the circumstances surrounding his prior juvenile adjudication for child molesting[4] and did not

---

[4] During the post-conviction hearing, Burton's trial counsel admitted that he did not look at any documentation concerning Burton's prior adjudication for child molesting.

explain that he failed to attend counseling mandated during his prior probation because his mother refused to provide transportation. Burton maintains that had the trial court been made aware of these circumstances, it likely would have imposed a lesser sentence.

[9] Indiana's standard for evaluating claims of ineffective assistance of counsel is well-settled. A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 1138 (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. at 1139. There is a "strong presumption" that counsel rendered adequate service. *Id*. Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim. *See Young v. State*, 746 N.E.2d 920 (Ind. 2001). Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *State v. Hollin*, 970 N.E.2d 147 (Ind. 2001).

[10] As noted above, the trial court identified two aggravating circumstances: (1) that Burton had a prior adjudication for child molesting and (2) that Burton was

dealing drugs while on probation. Although Burton's failure to attend mandated counseling was noted in the pre-sentence investigation report (PSI), the trial court did not indicate that it considered such as an aggravating circumstance. Thus, any explanation for such failure would likely have had no impact on the court's sentencing determination.

[11] To the extent Burton claims his counsel failed to investigate his reasons for failing to attend counseling or inquire about the circumstances of Burton's prior adjudication, we note that Burton's counsel testified that he reviewed the PSI and asked Burton if there was any information he wished to contest in the PSI or present at the hearing, as was his usual procedure. Burton does not explain what further investigation, aside from asking Burton himself, his counsel could have undertaken to discover why Burton did not attend counseling or to uncover the circumstances surrounding his adjudication for child molesting. Burton has provided no evidence suggesting that the trial court would have imposed a different sentence if trial counsel would have presented Burton's desired evidence during sentencing. Burton has not established that the post-conviction court erred in finding that his counsel rendered effective assistance during sentencing.

[12] Aside from the fact that there is no evidence to support a finding of deficient representation by Burton's counsel, Burton has not established that he was prejudiced. Burton's counsel negotiated a plea agreement providing for a cap on the sentence that was five years below the advisory sentence for a class A felony. The trial court evaluated the aggravating and mitigating factors and

concluded that an even greater mitigated sentence than was permissible under the plea agreement was warranted. The trial court ultimately sentenced Burton to twenty-two years with ten years suspended. The trial court was very thorough in its sentencing statement and in explaining the sentence it imposed. Burton has not shown that counsel's failure to explain why Burton did not attend mandated counseling or explain the circumstances of his underlying juvenile adjudication had any impact on the trial court's sentencing decision. Accordingly, Burton has not established prejudice.

2.

[13] Burton argues that enforcement of the savings clause in the new criminal code violates article 1, section 18 of the Indiana Constitution. Article 1, section 18 of the Indiana Constitution provides, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." It is well settled that this section applies only to the penal code as a whole, not to individual sentences. *Hazelwood v. State*, 3 N.E.3d 39 (Ind. Ct. App. 2014).

[14] The Indiana reformed criminal code went into effect on July 1, 2014. Under the new code, felonies are delineated by levels rather than classes. Under the old code, there were five classes of felonies, A through D, and murder. The new code contains seven levels of felonies, 1 through 6, and murder. Pertinent to the case at hand is that the code no longer contains the enhancement provision to increase the severity of a felony for dealing in a controlled substance due to the crime being committed within 1000 feet of a public

housing complex. Burton's crime under the prior code was classified as a class A felony that carried a fixed term of imprisonment of between twenty and fifty years with the advisory sentence being thirty years. Under the new code, because there is no longer an applicable enhancement provision, Burton's crime would be classified as a level 5 felony, carrying a fixed sentencing range of between one and six years and an advisory sentence of two years.

[15] In addition to redefining crimes and the applicable sentencing scheme, our legislature included specific savings clauses that clearly and unambiguously demonstrate the legislature's intent that the 2014 penal code not be applied retroactively, and that it is not intended as amerliorative legislation. Specifically, the savings clauses explicitly state that the enactment of the 2014 penal code "does not affect . . . (1) penalties incurred; (2) crimes committed; or (3) proceedings begun" before July 1, 2014. *See* Ind. Code Ann. § 1-1-5.5-21 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015); I.C. § 1-1-5.5-22 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015). The savings clauses further state that the penalties, crimes, and proceedings continue and shall be imposed and enforced under the prior law as if the new code had not been enacted. *Id.*

[16] Our Supreme Court has before held that "'the application of a prior law to those who committed crimes and were convicted and sentenced under that prior law does not constitute vindictive justice.'" *Gee v. State*, 508 N.E.2d 787,

788 (Ind. 1987) (quoting *Vicory v. State*, 400 N.E.2d 1380, 1383 (Ind. 1980)). Indeed, a savings clause is an enactment of the legislature and, as such, is cloaked with the presumption of constitutionality, which continues until rebutted. *Gee v. State*, 508 N.E.2d 787. It is the prerogative of the legislature when enacting changes to the penal code to decide to whom such changes apply. *Id.* When faced with a nearly identical argument years ago, our Supreme Court explained thus:

> When the Legislature decided in enacting the new criminal code that the penalties for some crimes should be modified or reduced, it chose to decide the question of when and under what circumstances the new penalties shall be given. Its decision to meet this issue must be regarded as highly appropriate. Appellant is, of course, correct in asserting that in doing so, the Legislature relied heavily upon the broad, general and long-standing rule of law that the law in effect at the time a crime is committed should be controlling. The time of a crime is selected as an act of the free will by the offender. Penal consequences are frozen as of that event. Alteration of them through subsequent events, both the uncontrollable and the manipulable, by the offender or the State, is foreclosed. The rule has decided marks of neutrality and fairness. Its use by the Legislature for this purpose cannot be fairly characterized as rendering the penal code without reformative purpose.

*Gee v. State*, 508 N.E.2d at 789 (quoting *Parsley v. State*, 401 N.E.2d 1360, 1361-62 (Ind. 1980)).

[17] Burton asserts that unlike prior revisions of the penal code, the 2014 reforms "were made because our prisons had become too full and some penalties had become disproportionate." *Appellant's Brief* at 13. Contrary to Burton's claim, we find no express statement by the legislature that the prior penalties had become "too severe and that lighter punishment is appropriate." *Id.* We agree

with the State that Burton's attempt to engraft a legislative declaration that prior penalties were too severe from the many purposes to be served by the penal code grossly oversimplifies the reforms undertaken.

[18] There is no doubt that the new penal code lowers the term of years imposed for some crimes. This is not, however, a clear expression by the legislature that the penalties were too harsh. To the contrary, the legislature indicated the continued appropriateness of the penalties imposed under the prior penal code as punishments when it clearly stated in the savings clauses that those penalties would continue to be imposed and enforced and that the doctrine of amelioration did not apply. Moreover, we note that similar savings clauses have been upheld against similar challenges when the 1977 penal code was enacted. *See e.g., Gee v. State*, 508 N.E.2d 787 (holding that savings clause prohibiting the defendant from receiving a sentence under the 1977 penal code when he committed the crime prior to its effective date even when he was sentenced after the effective date of the new code did not result in vindictive justice); *Vicory v. State*, 400 N.E.2d 1380 (Ind. 1980) (holding that savings clause did not violate the equal privileges clause of the Indiana Constitution). The post-conviction court properly rejected Burton's claim that the savings clauses constitute vindictive justice in violation of article 1, section 18.

3.

[19] Burton argues that his sentence is disproportionate in violation of article 1, section 16 of the Indiana Constitution.[5] Article 1, section 16 of the Indiana Constitution provides that "[a]ll penalties shall be proportioned to the nature of the offense." Generally, we are not at liberty to set aside a legislatively sanctioned penalty merely because it seems too severe. *Conner v. State*, 626 N.E.2d 803 (Ind. 1993). A criminal penalty violates the proportionality clause "only when a criminal penalty is not graduated and proportioned to the nature of the offense. *Conner v. State*, 626 N.E.2d at 806. Stated differently, "a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is 'so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." *Foreman v. State*, 865 N.E.2d 652, 655 (Ind. Ct. App. 2007) (quoting *Teer v. State*, 738 N.E.2d 283, 290 (Ind. Ct. App. 2000), *trans. denied*), *trans. denied*.

[20] To the extent Burton alleges the statutory punishment for the crime to which he pleaded guilty is constitutionally disproportionate, we note that penal sanctions

---

[5] In two short sentences, Burton argues that his sentence is "grossly disproportionate" upon comparison with the fact that his mother, who he claims was more culpable, "served only one year in prison." *Appellant's Brief* at 16. Burton's statement is a little misleading. From the transcript of the post-conviction hearing, it appears as though Burton's mother was sentenced to an aggregate twenty-year sentence, with twelve years suspended. Burton's mother was ordered to serve one year in jail and the rest was to be served on home-detention. In Petitioner's Exhibit 2, a transcript of the guilty plea and sentencing hearing for Burton's mother, the relevant pages of the transcript in which the sentence is pronounced are missing. We can glean from the record of those hearings, however, that there were other considerations presented to the court, including that Burton's mother had several health issues, which were relevant to the court's sentencing decision in that case. When looking at the entire picture, we do not agree with Burton's characterization that the sentence he received and the one imposed on his mother are "grossly disproportionate."

are primarily legislative concerns and hence, our view is highly restrained by virtue of the separation of powers doctrine. *Person v, State*, 661 N.E.2d 587 (Ind. Ct. App. 1996), *trans. denied.* "We will not disturb the legislative determination of the appropriate penalty for criminal behavior except upon a showing of clear constitutional infirmity. *State v. Moss-Dwyer*, 6896 N.E.2d 109, 111-12 (Ind. 1997). When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore, the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional. *Id.* at 112. Burton does not meet this burden.

[21] In support of his argument, Burton points to the fact that a less severe penalty would apply if he had committed the instant offense after July 1, 2014, when the reformed penal code went into effect. Burton specifically notes that his twenty-two-year sentence is over three times greater than the maximum sentence that could have been imposed had he committed the offense on or after July 1, 2014, the effective date of the reformed penal code. Merely because the new penal code altered the penalty imposed for similar offenses committed after it became effective does not make Burton's sentence disproportionate. The prospective application of the new penal code does not violate article 1, section 16 of the Indiana Constitution.

[22] This court has recently addressed and rejected a nearly identical claim and our Supreme Court summarily affirmed that decision. *See Cross v. State*, 997 N.E.2d 1125 (Ind. Ct. App. 2103), *summarily aff'd in relevant part, reversed on other grounds*, 15 N.E.3d 569 (Ind. 2014). In *Cross*, the defendant claimed that his

conviction and sentence for dealing in cocaine as a class A felony, because the offense was committed within 1000 feet of a youth program center, was disproportionate in light of, at that time, the upcoming changes to the penal code. This court rejected the defendant's claims that because his crime would no longer be punished as the highest level of felony under the new code, the legislature had shown that it found the sentence to be disproportionate to the nature of the offense. This court reasoned that because the overhaul of the penal code affected all crimes and not just drug crimes, the overhaul represented a broad revamp of Indiana's criminal system and was "not a statement regarding the proportionality of one singular criminal offense." *Id*. at 1131. The *Cross* court concluded that the defendant's sentence was not unconstitutional. Our Supreme Court summarily affirmed this court's conclusion in that regard.

[23] Burton's claim is indistinguishable from the claim presented and rejected in *Cross*. We therefore conclude that the post-conviction court properly relied upon the decision in *Cross* and rejected Burton's claim for post-conviction relief.

[24] Judgment affirmed.

Baker, J., and Najam, J., concur.