Steve L. YOUNG, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–0001–CR–32.

Supreme Court of Indiana.

May 4, 2001.

Terry R. Curry, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Steve Young was convicted of two counts of child molesting and of being a habitual offender. He was sentenced to concurrent terms of fifty and thirty years. The fifty-year sentence was enhanced by thirty years for the habitual offender conviction resulting in an aggregate sentence of eighty years imprisonment. In this direct appeal, he contends that (1) the trial court abused its discretion by denying his motion for DNA testing; (2) the trial court erred by granting the State's motion in limine to preclude evidence regarding prior false accusations by the victim; (3) the State engaged in prosecutorial misconduct; and (4) trial counsel was ineffective. We affirm the judgment of the trial court.

**Factual and Procedural Background**

Young, Erica Riley, and Riley's father lived together with Riley's seven children, three of whom were Young's. On the

night of March 29, 1997, Riley left the house and her children in Young's care. After the children were ready for bed, they and Young went into Riley's bedroom for "treats." Young gave sweets to some of the children and offered candy or money to L.R., Riley's eleven-year-old daughter, if she would put on Riley's nightgown. When L.R. refused, Young kept her in the room as the other children left. Young secured the door and then pushed L.R. onto the bed and penetrated her vaginally and anally. When the assault was over, he told L.R. to take a shower. L.R. showered and fell asleep before her mother returned home.

The next morning L.R. told her mother what had happened. Riley did not believe L.R. and took her to the hospital for a physical exam. The examination uncovered physical injuries consistent with L.R.'s description of the events, including a superficial tear to L.R.'s anus, hypopigmented inner labia, redness around L.R.'s hymenal edge, and abnormal vaginal discharge. A rape kit was assembled. No seminal fluid was found on either the oral or vaginal slides, but spermatozoa were found on the rectal slide.

Young was charged with two counts of child molesting. Both the State and Young requested DNA testing on the rectal slide, but Dr. Mohammad Tahir, the Technical Manager of the Marion County Crime Laboratory, determined that the small number of sperm rendered any testing unreliable. At trial, L.R. testified to the events as described above. She also testified that her grandfather and her brother heard her screaming when Young attacked her and they attempted to get

inside the bedroom. Her grandfather denied hearing any screams on the night of the attack. At trial, her brother, Delance, also denied hearing L.R.'s screams. However, Delance agreed that he had told police in a statement made shortly after the attack that he had heard his sister scream. Young was convicted of both counts of child molesting, found to be a habitual offender, and sentenced to eighty years imprisonment. Young then filed a motion to correct error, contending that his trial counsel was ineffective. The trial court held a hearing on this motion and denied it in a written order.

### I. DNA Testing

Young first claims that the trial court abused its discretion by denying his pretrial motion to compel DNA testing of the sperm sample taken from L.R.[1] The State's response to the motion asserted that it did not control the Crime Lab and any motion to compel must be directed to the laboratory. The State also claimed, without evidentiary support, that it had been advised by the laboratory that no reliable test could be performed. We think it is obvious that it would be an abuse of discretion to deny an impecunious defendant funding for a potentially exculpatory DNA test. Cf. Sewell v. State, 592 N.E.2d 705 (Ind.Ct.App.1992) (granting postconviction discovery of DNA where the conviction predated DNA technology and identification was the principal issue). But that is not what happened here. On August 13, the trial court denied Young's motion. The court later, by minute entry, directed the State "to submit [an] affidavit from the doctor about DNA testing." In an affidavit filed on December 8, 1998,

1. Young also alleges that this failure to have the DNA tested violated "Indiana Trial Rule 34, Art. I, Section 12 of the Indiana Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution." Be-

cause he does not present cogent arguments in support of these contentions, they are waived. Former Ind. Appellate Rule 8.3(A)(7) (now App.R. 46(A)(8)).

Tahir stated that the sample in this case contained eight spermatozoa and "we will not perform DNA typing analysis on a specimen which contains less than approximately fifty (50) Spermatozoa to obtain a reliable result...."

■ The trial court has broad discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice. *Berry v. State*, 715 N.E.2d 864, 866 (Ind.1999). It was not an abuse of discretion for the trial court to refuse to expend public funds on a test that the record before the trial court indicated would produce no reliable evidence. *Cf. Graham v. State*, 535 N.E.2d 1174, 1175–76 (Ind.1989). The trial court sua sponte supplemented the record with Tahir's affidavit, and Young provides nothing to the contrary. If Young wished to dispute this claim of unreliability, he was free to do so. On this record, we find no abuse of discretion in refusing to fund testing.

## II. Prior Accusations of Molestation

■ Young next claims that the trial court erred by sustaining the State's motion to exclude evidence of L.R.'s prior false allegations of molestation. By motion in limine, the State requested exclusion of this evidence. At the motion in limine hearing, Young's counsel stated that he intended to offer a statement by L.R. to Delance that L.R. intended to "lie on" Young. The trial court ruled that this testimony would be admissible. At trial, L.R. denied making such a statement, and the subject was not raised with Delance. As to the claim of L.R.'s false allegations against other men, the trial court took the view that evidence of this sort would result in a trial within a trial as to whether L.R. made any such allegations and, if so, as to the truth or falsity of L.R.'s accounts of these other incidents. The trial court

ruled on the motion in limine that the defense would have to ask for relief if it sought to admit *that* evidence. *This was* never done, so we have no idea what form this evidence, if it exists, would have taken. As a result, we have no basis to evaluate the degree to which the evidence would have complicated this trial. In the hearing on the motion to correct error, Young's counsel testified and again referred to L.R.'s prior accusations of molestation by others, but again gave no specifics. Failure to make an offer of proof of the omitted evidence renders any claimed error unavailable on appeal unless it rises to the level of fundamental error. *Miller v. State*, 716 N.E.2d 367, 370 (Ind.1999); *Perkins v. State*, 483 N.E.2d 1379, 1384 (Ind. 1985).

To constitute fundamental error, the "defendant must show that the error was a substantial and blatant violation of basic principles which rendered the result of the trial unfair." *Roach v. State*, 695 N.E.2d 934, 942 (Ind.1998). Even after the motion to correct error hearing, it is entirely unclear from the record what evidence, if any, Young would have presented. As a result, we cannot determine that the result of his trial was unfair. Young also makes the bald allegation on appeal that, "the potential for harm to Young by such exclusion cannot be denied." Although this may be true if the evidence exists, there is no offer to prove that it does exist, or if it does, what it is.

## III. Prosecutorial Misconduct

■ Young claims that the State engaged in prosecutorial misconduct by suggesting that statements made by the victim's brother Delance were substantive evidence that corroborated L.R.'s version of the attack. A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that it had a probable persuasive ef-

fect on the jury's decision. *Marcum v. State*, 725 N.E.2d 852, 858 (Ind.2000).

■ During closing argument, the State said:

> And Delance told us that just a day after this allegedly occurred, not even, not even twenty-four hours, he talked to Det. Cathy Graban in this case, and he told her that he heard screams. Something was going on in that room.
>
> . . . .
>
> Did [L.R.] scream out loud? Well, that's what Delance said·the day after.

At trial, Delance testified that he heard no screams or noise coming from the bedroom during the attack. He also claimed no memory of having told the police of hearing screams. The State presented Delance with a transcript of his statement to police on the day following the incident in an effort to refresh his recollection. Although the term "refresh recollection" was not used, use of the transcript for this purpose was appropriate. *See* 13 Robert Lowell Miller, Jr., *Indiana Practice* § 612.101 (2d ed. 1995) ("If the witness replies that the writing has refreshed his memory, he may be· examined on the subject but may not testify from the writing itself.").[2] Delance then admitted that he had told the officer of screaming on the night of the incident. The obvious next question was whether he was truthful in his statement to the officer. That question was not asked.

■ Young contends that Delance's admission that he made the prior statement was not admissible for the purpose cited by the prosecution, i.e., to prove that Delance heard screaming. He is correct that the admissible evidence (Delance's statement on the stand, not the transcript) established only that Delance reported screaming to the officer, not that it was true that he heard screaming on the night of the assault. Young correctly points out that the testimony did not satisfy the requirements of Indiana Evidence Rule 801(d)(1)(A) if offered to prove that Delance heard screaming. That rule provides that:

> [a] statement is not hearsay if: The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under

2. The term "refresh recollection" was not used by either the prosecutor or the witness. However, the following exchange was in substance used for this purpose. On cross-examination, defense counsel asked, "And you didn't hear any screaming, did you?" Delance responded, "No." On redirect,

> Q (State): Okay. And did you tell the detective [the day after the attack] that you heard [L.R.] scream? Did you tell her that?
> A (Delance): I can't remember, because that was a long time ago.
> Q: Okay. Delance, I'm going to show you what I've marked as State's Exhibit Number 10, and ask if you recognize this.
> A: Yes.
> Q: Okay. Is this the, a statement that you, you've seen before?
> . . . .
> A: Yes.

> Q: Okay. Is this the statement that you gave to the police officer on that day?
> A: Yes.
> Q: Okay. Did—have you read it over before today?
> A: Yès.
> Q: Okay. Delance, I'm going to direct your attention to the bottom of page 2, and ask you to read over from the question that begins, was she screaming. Just read it to yourself. Let me know when you're finished. Delance, at that time that you talked to the detective did you tell her that you heard your sister scream?
> A: I think I did.

Although a trial practice professor might demand that the questioner ask the witness if his memory is refreshed and remove the item before continuing, the foregoing was sufficient.

oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition.

Young is correct in his contention that because Delance's prior statement was apparently not made under oath, it was not admissible under Rule 801(d)(1)(A). It was, however, admissible under Rule 613 to impeach Delance's denial of having heard screaming. Miller, *supra*, § 613.101. Ordinarily, prior inconsistent statements are used to impeach, not as substantive evidence of the matter reported. *Id.* As a result the jury was left with Delance's testimony that, on the day after the event, he had reported screaming, and his denial at the trial that he had heard it. Presumably, his credibility in contesting L.R.'s account that included screaming was significantly impaired, but the statement was not, as the prosecutor described it, proof that Delance heard screaming. There is no basis to conclude that the prosecutor intentionally finessed this rather elegant point of evidence law, and all of this is insufficient to amount to prosecutorial misconduct. In any event, Young made no objection to the prosecutor's references to Delance's statement as support and requested no instruction on this point. Accordingly any claim of error is waived unless it constitutes fundamental error. *Robinson v. State*, 693 N.E.2d 548, 552 (Ind.1998). This omission is plainly not fundamental error. *See Allen v. State*, 716 N.E.2d 449, 453 (Ind.1999).

## IV. Ineffective Assistance of Counsel

■■■■■ Finally, Young claims that his trial counsel was ineffective. A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■■■■■ Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689, 104 S.Ct. 2052. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. 2052. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Ingram v. State*, 508 N.E.2d 805, 808 (Ind.1987).

■■■■■ The two prongs of the *Strickland* test are separate and independent inquiries. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Williams v. State*,

706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

■ In this case, Young alleges nine instances of deficient performance by trial counsel, two of which are failures to preserve the issues discussed in Parts II and III. The other allegations include that defense counsel did not: advise Young's daughter about a separation of witnesses order, cross-examine a doctor who testified for the State about L.R.'s physical injuries, confront L.R. concerning inconsistencies in her statements, object to additional parts of the State's closing argument, establish a foundation for Riley's testimony, or use evidence that the State had removed L.R. from her mother's care. Young further alleges that defense counsel fell asleep during a meeting with him. In its order on Young's motion to correct error, the trial court addressed Young's counsel's failure to advise his daughter and present her testimony and to cross-examine the doctor and concluded that:

> taken as a whole, counsel's performance was objectively reasonable. Second, the Court finds that, even if counsel's performance were deficient, the victim's testimony, the physical findings made by the doctor the day after the crime, and the finding of semen in her rectal area constitute overwhelming evidence of Young's guilt such that jury's verdict and Young's trial were reliable and fair.

We cannot conclude that the trial court abused its discretion in making these findings.

■ Even if there were isolated instances of deficient performance, we need not address every allegation in detail because Young has failed to establish prejudice. L.R. described the attack in great detail. Her testimony was corroborated by the physical evidence, including the injuries to her genital and rectal area and the semen in her rectal area. The trial court found the evidence so persuasive that the claimed errors would not have affected the result of the trial. We cannot say this finding was clearly erroneous. Although the trial court's finding of lack of prejudice was with respect to only two of the nine alleged shortcomings in trial counsel's performance, we reach the same result on Young's remaining claims. On this record, Young has not persuaded us that there is reasonable probability that the result of the proceeding would have been different if his trial counsel had performed adequately. Accordingly, he cannot succeed on his claim of ineffective assistance of counsel.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.