**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 19 2013, 7:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JAMES T. ACKLIN**
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES H. SUTTLE, JR.,          )
                               )
    Appellant-Defendant,        )
                               )
        vs.                 )     No. 49A02-1211-PC-906
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.         )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0705-PC-76663

**June 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

James H. Suttle, pro se, appeals the denial of his petition for post-conviction relief (PCR), in which he challenged his conviction for murder. On appeal, he presents the following restated issue for review: Did Suttle establish ineffective assistance of trial counsel by virtue of counsel's failure to provide Suttle's mental-health records to court-appointed psychiatrists?

We affirm.

The facts underlying Suttle's conviction of murder were set out in his direct appeal, as follows:

> On May 1, 2007, Suttle spent the evening drinking alcohol with Myeshia Williams, Billy Kilpatrick, and Terry Taylor on Williams' front porch. As they socialized, Taylor was selling crack cocaine to persons who passed the house. At some point, Suttle asked Taylor if Suttle could purchase cocaine on credit, and Taylor declined to give cocaine to Suttle. Suttle said he was going to get money and he would "be right back," and then walked away laughing and smiling.
>
> After Suttle left, Williams went into her house. Taylor and Kilpatrick went out to the street to listen to music and continue talking. Taylor turned on the radio in his truck and sat on the tailgate, while Kilpatrick leaned against the front of his car facing Taylor. Suttle returned about fifteen minutes after he left, carrying a shotgun. Suttle pointed the shotgun at Taylor and yelled "give me my money." Kilpatrick begged Suttle not to shoot Taylor. Suttle fired a shot into the ground. Taylor put his hands in the air and tried to jump off the truck. Suttle shot Taylor twice in the chest and once in the back. Between shots, Suttle was yelling "what's up now, Terry" and "give me my money." Kilpatrick ran into Williams' house. Before fleeing the scene, Suttle pointed the shotgun at the house and yelled to Kilpatrick that he was next. Taylor died from his gunshot wounds.
>
> The State charged Suttle with murder, and a jury found him guilty. At sentencing, the court found a mitigator in Suttle's mental illness, but did not assign it much weight because a doctor testified the diagnosis was "tentative until further observation." The court also found Suttle's remorse mitigating, his criminal history aggravating, and his probationary status at the time of the

2

crime aggravating. Finding the mitigators outweighed the aggravators, the court sentenced Suttle to fifty years imprisonment.

*Suttle v. State*, No. 49A04-0804-CR-230, *slip op.* at 1 (Ind. Ct. App. Feb. 25, 2009) (footnotes and internal citations omitted).

The facts relevant to the present petition are that before Suttle's trial, trial counsel learned that Suttle suffered from a mental illness. As a result, counsel filed a notice of insanity defense and a request for the appointment of two psychiatrists to evaluate Suttle's mental health. The trial court appointed Drs. George Parker and Roger Perry to evaluate Suttle to determine whether he was competent to stand trial and whether he was able to appreciate the wrongfulness of his actions at the time of the offense. The order concerning the appointment of Drs. Parker and Perry included the following paragraph:

> To the extent there exist records of prior treatment of the defendant that defense counsel considers relevant to the competency or sanity examination, **DEFENSE COUNSEL IS HEREBY ORDERED** to notify you [i.e., Drs. Parker and Perry] of the existence of those records within 7 days. **DEFENSE COUNSEL IS FURTHER ORDERED** to request production of those records from the appropriate providers within 10 days, and to provide those records to you within 10 days of obtaining the records. The Court is to be provided notice of defense counsel's compliance with the foregoing requirements. **IF YOU HAVE BEEN NOTIFIED THAT DEFENSE COUNSEL SEEKS YOUR REVIEW OF PRIOR MDICAL RECORDS, DO NOT PREPARE A WRITTEN REPORT UNTIL SUCH TIME AS YOU HAVE REVIEWED THOSE RECORDS**.

*Direct Appeal Appendix* at 47 (emphasis in original). Defense counsel did not provide notice to the court with respect to the existence of any treatment records referenced in the order, nor did Dr. Parker receive any documents from counsel pursuant to this order. Dr. Parker examined Suttle and concluded that Suttle was competent to stand trial and appreciated the

wrongfulness of his actions at the time the murder was committed. Dr. Parker apparently submitted a report that indicated a diagnosis of possible schizophrenia. Dr. Perry also submitted a report. Neither report is included in the appellate record.

At sentencing, Suttle argued that his mental illness was a mitigating factor. The court discussed its conclusion on that issue as follows:

> The Court will find as mitigating the fact that you have expressed remorse, the fact that you do suffer some form of mental illness. The Court is going to give your – your mental illness minimal weight because according to Dr. Parker, your diagnosis of paranoid schizophrenia should be considered tentative until you were [sic] either observed over a longer period of time or additional medical records become available.

*Trial Transcript* at 331-32. Upon its finding that the mitigating factors outweighed the aggravating factors, the trial court sentenced Suttle to fifty years, which is five years less than the advisory sentence for murder. *See* Ind. Code Ann. § 35-50-2-3(a) (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013).

As it turned out, Social Security and Midtown Mental Health records were then available that were relevant to the question of Suttle's mental illness. At the post-conviction hearing, Dr. Parker testified that had he reviewed those records at the time, he would have definitively confirmed the tentative diagnosis that Suttle suffered from paranoid schizophrenia. Suttle filed his pro se PCR petition on November 30, 2009, and amended the petition once before a hearing was conducted. Following the hearing, the court denied Suttle's petition, which is the ruling that Suttle now appeals. Suttle contends trial counsel rendered ineffective assistance in failing to provide Drs. Parker and Perry with mental health records for use in their evaluation of his mental health.

4

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 1138 (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* at 1138 (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000)).

A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 1138 (quoting *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. There is a "strong presumption"

that counsel rendered adequate service. *Id.* Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim. *See Young v. State,* 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

Dr. Parker testified at the post-conviction hearing that if he had reviewed Suttle's Social Security and Midtown Mental Health records at the time of his evaluation of Suttle, his diagnosis would have changed from *possible* paranoid schizophrenia to paranoid schizophrenia. Suttle contends that this change in the assessment would have caused the court to assign a greater mitigating weight to Suttle's mental illness, which in turn would have resulted in a lesser sentence. In point of fact, the trial court found that Suttle "do[es] suffer some form of mental illness." *Trial Transcript* at 332. Moreover, the court was aware via Dr. Parker's report of the possibility that Suttle's form of mental illness *might* be paranoid schizophrenia. Although the comments recited previously in this opinion are susceptible to a contrary construction, we are not persuaded that Suttle has established with the requisite certainty that the sentence imposed upon the corrected classification would have been reduced even further than his current sentence.

Because Suttle appeals from a negative judgment and his appeal turns on factual issues, he will prevail only if he convinces us that the evidence "as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003). In other words,

6

he must convince us "that there is *no* way within the law that the court below could have reached the decision it did." *Id*. (emphasis in original). In the context of this case, this means he must establish that there is no way the post-conviction court could have concluded that the trial court would not have further reduced Suttle's sentence had a definitive classification of his mental illness (i.e., paranoid schizophrenia) been provided to the court.

The trial court affirmatively found as a mitigator that Suttle has a mental illness. Although the court was not inclined to assign it great weight, the court determined that the combined weight of it and the only other mitigator – Suttle's remorse – outweighed the aggravating circumstances and justified a sentence less than the advisory. Would the confirmed diagnosis of paranoid schizophrenia have changed the calculus enough to prompt a further reduction in the sentence? Upon review, the question we must answer is not whether the court could or would have reduced the sentence. Rather, the question is whether we can say there is *no* way the court would have failed to reduce the sentence. *See Stevens v. State*, 770 N.E.2d 739.

Our Supreme Court has noted, "[w]hat is brought out [during the penalty phase] that will help [a defendant] is what goes to show that he is not as 'bad' a person as one might have thought from the evidence in the guilt phase of the proceeding." *Id*. at 755 (quoting *Stewart v. Gramley,* 74 F.3d 132, 136 (7th Cir. 1996), *cert. denied*, 519 U.S. 838). Mental illness as a mitigator may warrant less weight where the nexus between the defendant's mental illness and the commission of the crime is not clear. *See Archer v. State*, 689 N.E.2d 678 (Ind. 1997). Suttle and the others involved in this incident had been drinking throughout

7

the evening on the night Taylor was murdered. There is no suggestion that Suttle's mental illness was a precipitating factor in the shooting. In fact, Suttle defended on a theory of self-defense and the parties were forbidden by an order in limine from mentioning his history of mental illness. Finally, we note that Dr. Parker testified at the post-conviction hearing that although the records would have caused him to confirm the tentative diagnosis of paranoid schizophrenia, they would not have altered his conclusions that Suttle was competent to stand trial and was able to appreciate the wrongfulness of his actions at the time of the offense.

Because there is no clear nexus between the shooting and Suttle's mental illness, we cannot say that there is no way within the law that the post-conviction court could have reached the conclusion that the sentence imposed by the trial court would have remained the same even with a definitive diagnosis of paranoid schizophrenia.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.