**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NEIL SHORT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A04-1308-PC-422 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause No. 32D03-1106-PC-4

**April 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Neil Short appeals the denial of his petition for post-conviction relief (PCR) following his conviction under Ind. Code Ann. § 35-42-4-3 (West, Westlaw current through P.L. 29 of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through March 13, 2014) for sexual misconduct with a minor, as a class C felony. Short contends the trial court erred in ruling against his claim that he received ineffective assistance of trial counsel.

We affirm.

The facts supporting his conviction were set out by this court in an unpublished memorandum decision affirming his conviction. Those facts were as follows:

> In 2008, ten-year-old C.T. lived in Short's house with her two younger brothers; her mother, Marti; her mother's boyfriend, Brian; and Brian's mother, Karla, who was Short's girlfriend. C.T. called fifty-one-year-old Short Papaw and thought of him as her grandfather. In November 2008, C.T. told her cousin, twelve-year-old A.K., that Short had come into the bedroom while she was sleeping at his house, put his hand down her pants, and touched her vagina. A.K. went home and told her mother, Tina, what had happened to C.T. Tina contacted Marti that same night.
>
> Marti immediately moved out of Short's house with her three children. She and the children stayed with Tina for a few days and then moved in with a friend in Lizton. Marti reported the molestation to the Lizton Police Department. A Lizton Police Officer referred Marti to the Brownsburg Police Department, where Detective Sergeant Jennifer Pyatt interviewed C.T. The Hendricks County Department of Child Services also investigated the case, and a DCS case manager interviewed C.T.
>
> Short was charged with sexual misconduct with a minor as a class C felony. At trial, C.T. testified Short touched her vagina with his hand. Short did not testify.

*Short v. State*, No. 32A01-1002-CR-54, slip op. at 1 (Ind. Ct. App. Sept. 15, 2010) (footnote omitted).

Upon appeal, Short contends he received ineffective assistance of trial counsel in the

2

following ways: 1) counsel failed to object to hearsay; 2) counsel failed to object to improper opinion evidence; and 3) counsel failed to bring to the attention of jurors that the victim crossed her fingers outside the view of the jury.

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 1138 (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* at 1138 (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)).

A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E.2d 1134. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 1138 (quoting *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the

second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. There is a "strong presumption" that counsel rendered adequate service. *Id.* Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim. *See Young v. State,* 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

Short first claims that counsel rendered ineffective assistance in failing "to object to repeated instances of hearsay." *Brief of Appellant* at 4. Samantha Sellers worked as a caseworker for the Hendricks County Department of Child Services (DCS). Citing to page 341 of the trial transcript, Short contends that Sellers testified that inappropriate touching had occurred. We observe first that even if Sellers had testified to that fact, such might arguably constitute vouching testimony, but it would not be hearsay. Moreover, we have examined page 341 of the trial transcript and find no instance in which Sellers testified as Short contends. We will produce page 341 in its entirety:

A    The more times the child was interviewed, the more trauma that is provided to that child to have to go back and, and talk about it over and over again. So DCS, law-enforcement try to an [sic] attempt to have that one interview to prevent that.

Q    So how could it be harmful to have to talk about circumstances more than once?

A    Can you repeat the question?

Q    I'll strike the question. Uh, were there unusual circumstances from this investigation?

A    Yes.

Q    Can you briefly describe what those circumstances were that took this out of the norm?

4

A  There were allegations that [C.T.] had been inappropriately touched by a member of the household she had currently been living in.

Q  And were there protocol [sic] in place by DCS that require she be interviewed immediately?

A  Due to the factors of mom removing herself and the children from that situation, we had the [sic] within the five-day timeframe. However, because of the nature of the allegations, you do want to try to talk to that child witness as soon as possible.

*Trial Transcript* at 341-42. We find no hearsay in this excerpt. Sellers referred only to "allegations" but did not provide any details about what C.T. had said. *Id*. at 341. Short contends that trial counsel acknowledged at the post-conviction hearing that it was error not to object to this testimony. This is not strictly the case. Trial counsel was asked whether he recalled "that there was inappropriate touching based upon what [C.T.] had told [Sellers], do you recall any testimony to that?" *PCR Transcript* at 9. Trial counsel responded that he did not recall it. In response to a follow-up question, trial counsel then acknowledged such "seems to be hearsay without an exception." *Id.* The point remains, however, that counsel did not remember such testimony; neither do we find testimony to that effect on the page specified by Short. Under the circumstances, trial counsel's "acknowledgment" of error was entirely hypothetical. We find no ineffective assistance of counsel here.

Moreover, even if this did constitute impermissible hearsay, the testimony did not prejudice Short. At most, Seller's testimony informed the jury that C.T. had made allegations that Short molested her. Of course, during her testimony, C.T. testified at great length concerning those allegations. The erroneous admission of hearsay statements is harmless error when the erroneously admitted evidence is merely cumulative of other evidence properly before the trier of fact. *Nunley v. State*, 916 N.E.2d 712 (Ind. Ct. App. 2009), *trans.*

5

*denied*. Even assuming Seller's testimony constituted inadmissible hearsay, it was merely cumulative of C.T.'s trial testimony. Therefore, because Short was not prejudiced by it, such does not constitute grounds for reversal on the basis of ineffective assistance of counsel. *See Young v. State,* 746 N.E.2d 920.

A.K. was C.T.'s twelve-year-old cousin. She testified that C.T. told her (i.e., AK) that Short touched C.T.'s privates. A.K. was asked whether she responded to C.T. when C.T. made this claim. A.K. stated, "I asked her if she was lying and she told me no." *Trial Transcript* at 378. A.K. was then asked why she had asked that question of C.T., i.e., "did you not believe her [?]" *Id.* at 379. A.K. responded, "I believed her, I was just curious." *Id.* Trial counsel acknowledged at the post-conviction hearing, "that's hearsay and should have been objected to [.]" *PCR Transcript* at 11.

In a similar vein, Short complains about the testimony of Tina Hester, A.K.'s mother and C.T.'s aunt. Hester testified that C.T. told Hester that Short touched her and indicated where the touchings had occurred. Hester further testified that C.T. told her Short said he would tell people she was lying about the touchings if she told anyone. Short contends both statements constitute inadmissible hearsay, and that trial counsel rendered ineffective assistance of counsel in failing to object. He further notes that trial counsel acknowledged the statements in question were hearsay and that he erred in failing to interpose objections. Assuming that trial counsel rendered deficient performance in these respects, the claim of ineffective assistance of counsel based upon these errors must fail because Short has not identified the requisite prejudice.

6

We find this court's opinion in *Surber v. State*, 884 N.E.2d 856 (Ind. Ct. App. 2008), *trans. Denied*, instructive. In *Surber*, the defendant was on trial for child molesting. During the presentation of the State's case, three separate witnesses repeated what the child victim had told them about the molestations. Upon appeal, the defendant argued that the trial court erred in admitting the statements because they "resulted in a drumbeat of repetition that prejudiced the jury." *Id.* at 863. The court rejected this argument upon its conclusion that the error, if any, was harmless. The court explained: "[The victim] was the first witness to testify and was subject to cross-examination. Moreover, [the three witnesses'] testimony was brief, consistent with, and did not elaborate upon [the victim's] testimony. We conclude that any error was harmless." *Id.* at 864. Similarly, in the present case, C.T. was the first to testify and was subject to cross-examination. Moreover, Hester's and A.K.'s testimony about what C.T. had told them "was brief, consistent with, and did not elaborate upon" C.T.'s testimony. *Id.* Thus, consistent with our conclusion in *Surber*, Short was not harmed by it. In the context of a claim of ineffective assistance of counsel, this means that Short was not prejudiced by the purported error. Therefore, the claim fails. *See Young v. State,* 746 N.E.2d 920.

Short next claims that trial counsel rendered ineffective assistance by failing to object to improper opinion evidence – essentially, vouching testimony. He cites three examples of such improper evidence. The first instance involved Sellers's testimony that C.T.'s allegations against Short were substantiated. She was asked to summarize her assessment of the situation following a brief investigation. She replied,

7

Assessment that was, that, uh, it was substantiated against Mr. Short for the allegations that came in regarding [the victim] and pertaining to [the victim's] interview, and along with the fact that upon mom finding out that information she immediately left that home and, and sought safety for her and her children, to, to, for that to not continue to happen.

*Trial Transcript* at 362-63.

The second and third instances of improper vouching testimony, according to Short, occurred during the testimony of Detective Jennifer Pyatt of the Brownsburg Police Department. In the first instance, Detective Pyatt was asked how many cases of suspected child abuse in which she had conducted interviews actually culminated in the filing of charges. She indicated that it was less than half. She was then asked why the percentage was so low, and responded as follows:

Well obviously just because you have an accusation, if I don't have anything to back it or any other statements to back that accusation or evidence, uh, sometimes you just cannot proceed if I, if I don't believe that I can, uh, prove or at least corroborate, uh, prove or at least corroborate, uh, what the victim, check that, the child is saying, and sometimes we just can't go forward.

*Trial Transcript* at 465. Short contends this constituted vouching for C.T.'s credibility in that it conveyed to the jury that there was evidence corroborating C.T.'s claims.

Also during Detective Pyatt's testimony, she was asked whether she had noticed that during C.T.'s testimony on the day before, C.T. yawned when she started talking about Short. Detective Pyatt indicated that C.T. had done the same thing during her interviews with the child. At the conclusion of Detective Pyatt's testimony, the judge asked the jurors if they had any questions, and they did. The judge passed along this question: "As a professional, how would you explain the behavior of yawning during the quote incident conversation close

8

quote?" *Id.* at 540. The detective responded: "Uh, in this instance and in many instances, uh, that is, uh, regression, that is when the child, uh, or the, the child being interviewed basically starts to detach from the traumatic event or incident that we're asking them to talk about."

*Id.* The court then asked, "What does the yawn mean?" *Id.* The detective responded:

> Again, the, the yawn, it's a step, it can be, uh, characteristic of many other types of uh behaviors that can be exhibited throughout an interview. Uh, a yawn, the covering of the mouth, often times they will ball up, uh, pulled her legs up to their chest, uh, not make eye contact. They can cry. Uh, they can, they can even actually even just make statements such as you know they'll just completely shut down and, uh, not be able to answer any questions.

*Id.* The State then followed up with these questions:

Q      As far as the yawning goes, Detective, uh, you say that's a sign of regression and, uh, is it a sign of boredom or, or anything like that?

A      No, it's just a sign of the child trying to step away from the traumatic event and not have to relive it and describe it.

Q      So it's not a sign of the child not taking the situation seriously?

A      Not at all, they, they take it very seriously.

Q      Okay.

A      It's just an event in which [sic] they would rather not recall.

*Id.* at 541. According to Short, this testimony apprised the jurors that C.T.'s yawning was the result of a traumatic incident.[1]

---

[1] Short also alleges that Detective Pyatt testified concerning certain alleged inconsistencies in C.T.'s testimony, and specifically that Detective Pyatt "was trying to give the jury reasons out there that [C.T.] was inconsistent [.]" *Brief of Appellant* at 6. Short does not, however, further identify what those comments were and where such instances may be found in the record. Ind. Appellate Rule 46(A)(8)(d) provides: "If the admissibility of evidence is in dispute, citation shall be made to the pages of the Transcript where the evidence was identified, offered, and received or rejected in conformity with Rule 22(C)." Therefore, with respect to testimony that has

Short alleges that the final instance of alleged improper vouching evidence during Detective Pyatt's testimony occurred when Detective Pyatt was asked, "[h]ow you go about evaluating the credibility of [C.T.'s] statements when there are inconsistencies?" *Id.* at 534. Detective Pyatt responded that "the child could merge more than one event, and she's not going to be able to tell you dates and exact details if it was something that occurred over a period of time." *Id.*

In order to establish prejudice under *Strickland* based upon a failure to object, a petitioner must show "prejudicial failure to raise an objection that the trial court would have been required to sustain." *Stephenson v. State*, 864 N.E.2d 1022, 1035 (Ind. 2007), *cert. denied*, 552 U.S. 1314 (2008). In other words, a petitioner has to show that the trial court would have been required to sustain the objection, and that the failure to obtain that ruling prejudiced the petitioner. Short implies[2] that an objection to the foregoing instances of alleged vouching testimony would have been sustained pursuant to *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012).

In *Hoglund*, our Supreme Court observed that "[f]or over two decades our courts have adhered to relaxed evidentiary rules concerning the testimony of children who are called upon as witnesses to describe sexual conduct." *Id.* at 1232. In so doing, Indiana had been part of a minority of jurisdictions that allow "some form of vouching of child witness testimony in child molestation cases." *Id.* at 1235. The new rule enunciated in *Hoglund* was:

---

not been specifically identified, the argument is waived. *See Lyles v. State*, 834 N.E.2d 1035 (Ind. Ct. App. 2005), *trans. denied*.

[2] *Hoglund* is the only authority cited in this section of Short's appellate brief.

> [W]e expressly overrule that portion of *Lawrence* allowing for 'some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child was not prone to exaggerate or fantasize about sexual matters.' [*Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984)]. This indirect vouching testimony is little different than testimony that the child witness is telling the truth.

*Hoglund v. State*, 962 N.E.2d at 1237. More broadly, the Court disallowed testimony by any witness, whether lay or expert, that another witness – including a child witness – is or is not telling the truth. Even assuming, without deciding, that the testimony in question amounts to impermissible vouching testimony within the meaning of *Hoglund*, Short's claim of ineffective assistance of counsel premised on this testimony fails.

Short's trial was held in 2009. *Hoglund* was not decided until March 8, 2012. Before *Hoglund*, as indicated by our Supreme Court in that opinion, the state of the law on such matters was that Indiana was "part of the minority of jurisdictions in allowing some form of vouching the child witness testimony in child molest cases." *Id.* at 1235. The testimony in question, if vouching, was permissible pursuant to the more relaxed standard for admissibility in place prior to *Hoglund*. "'An attorney is not required to anticipate changes in the law and object accordingly' in order to be considered effective." *Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005) (quoting *Fulmer v. State*, 523 N.E.2d 754, 757-58 (Ind. 1988)).

Obviously, Short's counsel cannot be said to have rendered deficient performance in failing to register an objection to evidence that was lawful at the time. *See Sweeney v. State,* 886 N.E.2d 1, 8 (Ind. Ct. App. 2008) ("[f]or purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not

11

anticipating or initiating changes in the law"), *trans. denied, cert. denied,* 555 U.S. 1003. Therefore, Short's claim of ineffective assistance of counsel in this regard fails.

Finally, Short contends trial counsel rendered ineffective assistance in failing to present exculpatory evidence to the jury. This is based upon the fact that Short's sister approached trial counsel sometime after C.T. testified and informed counsel that she had observed "that [C.T.] had crossed her fingers during her testimony." *PCR Transcript* at 21. Short does not explain specifically how counsel's failure to pursue this matter prejudiced him. Rather, he lumps this alleged deficient performance together with the other allegations of deficient performance and contends the prejudice was based upon "the cumulative effect of counsel's errors." *Appellant's Brief* at 9.

Based upon the novel nature of this claim, it seems to us that Short is putting the cart ahead of the horse in simply labeling this as exculpatory evidence and proceeding immediately to the prejudice element. We understand the implication – i.e., that C.T. crossed her fingers while testifying because she knew she was not telling the truth. The source of the underlying factual claim (i.e., Short's sister), however, is certainly biased toward Short, and there is some question as to *when* this information was passed along to trial counsel. It is even possible that such was done after trial was concluded. In any event, the exculpatory value of this information is questionable at least, and certainly not such that it leads us unerringly and unmistakably to conclude that the post-conviction court erred in denying Short's claim in this regard. *See Bethea v. State*, 983 N.E.2d 1134. Put plainly, we cannot conclude that this evidence has any exculpatory value.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.