## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2020, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Evans
Dollard Evans Whalin LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jada Nichole Russell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 31, 2020

Court of Appeals Case No.
19A-CR-1941

Appeal from the Hamilton
Superior Court

The Honorable Dennis D. Carroll,
Senior Judge

Trial Court Cause No.
29D04-1811-CM-8285

**Bradford, Chief Judge.**

# Case Summary

[1] On November 19, 2018, Jada Russell initiated a physical altercation with Sevynith Carter and Meg Roberts. She was subsequently charged with Class A misdemeanor battery and Class B misdemeanor battery. Steve Dillon testified during Russell's bench trial that he observed Russell fighting with Roberts. On cross-examination, Russell attempted to impeach Dillon's credibility by questioning him about a prior inconsistent statement that he allegedly made to police. After the parties had rested and the evidentiary portion of the case had been closed, Russell requested that the trial court reopen the case so that she could recall Dillon and attempt to further impeach his credibility. The trial court denied this request, found Russell guilty as charged, and imposed an aggregate 545-day sentence. Russell contends that the trial court abused its discretion in denying her request to reopen the case. We affirm.

# Facts and Procedural History

[2] On November 19, 2018, Carter and Roberts were students at the Excel Center, an alternative high school for teenagers and adults, in Noblesville. The Excel Center shared a building with the Noblesville branch of Ivy Tech Community College. On that day, Carter and Roberts were sitting in Carter's vehicle in the school's parking lot. The two friends sat "talking for about an hour" before interacting with anyone else. Tr. p. 12.

[3]     Russell was a student at Ivy Tech and an acquaintance of Roberts. At some point, Russell approached the passenger side of Carter's vehicle and initiated a heated conversation with Roberts through the slightly-opened window. Russell "was really irritated and angry" at Roberts. Tr. p. 61.

[4]     As Russell continued yelling at Roberts, Carter told Russell that she "need[ed] to leave." Tr. p. 13. Russell continued yelling as Carter "stepped out of [her] vehicle" and repeated that Russell "need[ed] to leave." Tr. p. 13. Russell did not leave, but rather "walk[ed] around to the driver's side of [Carter's] vehicle" and attempted to enter Carter's vehicle headfirst, "like she was going to crawl over [the] driver's seat to the passenger side." Tr. p. 14. Carter "wedged" herself between the vehicle and Russell, pushed Russell away from the vehicle, told Russel not to touch her vehicle, and again indicated that Russell "need[ed] to leave." Tr. p. 14. Russell did not leave but went back around to the passenger side of the vehicle after Roberts got out of the vehicle. Russell "reached out and grabbed [Roberts] by the hair and was pushing her against [Carter's] car door." Tr. p. 14.

[5]     In an attempt to protect her friend, Carter tried to stop the fight, grabbing Russell and telling her to "let go" of Roberts. Tr. p. 14. Russell responded by "reach[ing] her other hand around and grabb[ing] [Carter] by the hair." Tr. p. 14. Roberts eventually "got away" after the three women fell to the ground and Russell got "on top of" Carter. Tr. p. 14. After Carter and Russell "managed to get back up," Russell held onto Carter "by the hair and started hitting [her] in the face … between five and eight times." Tr. p. 15. While Russell was

"beating the sh[**] out of" Carter, Carter removed her shoe and hit Russell with it. Tr. p. 41. Russell eventually let go of Carter and "went back after" Roberts. Tr. p. 15.

[6] Russell "aggressively [swung Roberts] around trying to pull her one direction, pull her another direction." Tr. p. 15. Carter again tried to separate Russell and Roberts. Russell "reached into [Carter's] car and pulled [her] phone out of [her] car and slammed it to the ground and shattered the whole backside of [the] phone." Tr. pp. 15–16. Russell grabbed Carter but released her and "went after [Roberts] again." Tr. p. 16.

[7] After being informed by a teacher that there was a fight occurring in the parking lot, Dillon, the director of the Excel Center, "went out to the parking lot" and observed Russell and Roberts "engaged in a fight." Tr. p. 101. He opined that "[i]t wasn't much of a fight because [Russell] was doing most of the fighting, most of the hitting at that time" as Roberts "was on the ground and [Russell] was striking her while she was on the ground." Tr. pp. 101–02. Carter was "off to the side" standing "very close to the fight" but was not engaged in the fight. Tr. p. 102. The fight ended soon after Dillon "called out for them to stop fighting." Tr. p. 102.

[8] The police arrived and took statements from Carter and Roberts. An EMT was called to examine Carter, who had "scrapes and bruises and a little bit of bleeding on [her] knees from falling and then there was a chunk of [her] hair missing that had been ripped out while [Russell] was holding [her] hair." Tr. p.

18. Carter suffered "pain in the side of [her] head from where [her] hair had been ripped out and then [her] eyes from where [Russell] had hit [her] directly in the eye socket." Tr. p. 18. Roberts suffered pain from Russell pulling her hair.

[9] On November 29, 2018, the State charged Russell with Class A misdemeanor battery resulting in bodily injury and Class B misdemeanor battery. The trial court conducted a bench trial on July 22, 2019. Dillon testified during direct-examination that he witnessed Russell and Roberts fighting. He was questioned on cross-examination by Russell about an allegedly inconsistent prior statement that he made to Officer Matt Foley that he did not see any of the fight. After the parties had rested and the evidentiary portion of the trial closed, Russell requested that the trial court reopen the case and allow her to recall Dillon for impeachment purposes, stating that she wished to question him about the allegedly prior inconsistent statement that he made to Officer Foley. The trial court denied Russell's request. The trial court subsequently found Russell guilty as charged and imposed an aggregate 545-day sentence, with twenty days executed in the Hamilton County Jail and the remaining 525 days suspended to probation.

# Discussion and Decision

[10] Russell contends that the trial court abused its discretion in denying her request to reopen the case to allow her to recall Dillon.

> Whether to grant a party's motion to reopen [her] case after having rested is a matter committed to the sound discretion of the trial judge. The decision will be set aside only when it appears that this discretion has been abused. Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request.

*Flynn v. State*, 497 N.E.2d 912, 914 (Ind. 1986) (internal citation omitted). "Reversal must be predicated upon an actual abuse of discretion, *i.e.*, a decision that was clearly untenable or unreasonable, and a showing of prejudice to the substantial rights of the complaining party." *Alvarado v. State*, 89 N.E.3d 442, 447 (Ind. Ct. App. 2017) (internal quotations and brackets omitted).

[11] In *Moss v. State*, 13 N.E.3d 440, 446–47 (Ind. Ct. App. 2014), we considered whether the trial court abused its discretion in denying Moss's request to reopen the case for the purpose of allowing him to admit the transcript of a witness's prior statement to law enforcement. Like in this case, the witness testified and was subjected to cross-examination and the statement at issue was admissible only to impeach him, not as substantive evidence. *Id.* (citing *Young v. State*, 746 N.E.2d 920, 926 (Ind. 2001) ("Ordinarily, prior inconsistent statements are used to impeach, not as substantive evidence of the matter reported.")). Also like in this case, the allegedly prior inconsistent statement was discussed during the witness's trial testimony in an attempt to impeach him. *Id.* Upon review, we concluded that "[b]ecause the statement was used during Moss's case-in-chief

for the only purpose it could have been used—impeachment—it was not error for the trial court to refuse to reopen the case after the defense rested." *Id.* at 447.

[12] In considering Russell's contention that the trial court abused its discretion in denying her request to reopen the case, we find our conclusion in *Moss* to be instructive. The record reveals that like in *Moss*, Russell's defense counsel, without admitting the allegedly prior inconsistent statement into evidence, questioned Dillon about the statement on cross-examination. Specifically, counsel engaged Dillon in the following exchange regarding the statement:

> Q    Steve, isn't it true that you told the officer during the investigation that you didn't see the physical altercation at all?
> A    That is not correct.
> Q    So, it is your testimony today that you never told the officer that you didn't see any of the fight at all?
> A    That's correct.
> Q    Okay. Do you remember talking with Officer Foley and another officer during the interview … do you remember having some conversation with the officers?
> A    Yes.
> Q    Okay. Would it refresh your memory if I showed you your comments that you made to Officer Foley?
> ****
> Q    Well, do you remember ever making that statement?
> A    As I told you a couple of times already, no, I did not make that statement.
> Q    Would it refresh your recollection if I showed you documents –
> ****
> Q    So your testimony today is that you saw [Russell] fighting

[Roberts]?

A    As previously stated, yes.

Tr. pp. 106–07.  This exchange reveals that Russell attempted to impeach Dillon's credibility by questioning him about his prior allegedly inconsistent statement during her case-in-chief.  Like in *Moss*, the statement was used during Russell's case-in-chief for the only purpose it could have been used— impeachment.  Russell was given a full opportunity to impeach Dillon to the extent possible with his alleged prior statement.  We fail to see how recalling Dillon for further questioning about his alleged prior statement would be anything other than repetitive.  The trial court did not abuse its discretion by denying Russell's request to reopen the case to recall Dillon and attempt to further impeach his credibility by asking him additional questions about the alleged statement.  *Moss*, 13 N.E.3d at 447.

[13]    The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.