## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2020, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Curt Lowder
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Curt Lowder,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 9, 2020

Court of Appeals Case No.
19A-PC-269

Appeal from the Marion Superior Court

The Honorable Richard Hagenmaier, Commissioner

The Honorable Lisa F. Borges, Judge

Trial Court Cause No.
49G04-1012-PC-92401

**Tavitas, Judge.**

# Case Summary

Curt Lowder, pro se, appeals the post-conviction court's ("PC Court") denial of his petition for post-conviction relief ("PCR"). We affirm.

# Issues

Lowder raises three issues on appeal, which we consolidate and restate as follows:

 I.  Whether the PC Court erred in denying Lowder's petition for PCR.

 II. Whether the PC Court erred in denying Lowder's request to withdraw his petition for PCR.

# Facts

The facts as stated in Lowder's direct appeal are as follows:

> In the early morning hours of December 13, 2010, Lowder and his girlfriend, Angela Dodson, returned to their shared residence after consuming alcohol at a local bar. Lowder and Dodson were joined by their mutual friend Troy Malone and a fourth individual who departed before the incident in question occurred. At approximately 3:00 a.m., Lowder placed a telephone call to his friend David Applegate in search of beer. Lowder then drove in his truck to the Applegate residence, accompanied by Dodson and Malone.

> At the Applegate residence, Dodson and Malone waited in the truck while Lowder went inside and spoke with Applegate and

Applegate's thirteen-year-old son, D.A.[1] During this conversation, Lowder received a call on his cellular telephone, became angry, and left the Applegate residence without taking any beer. Lowder testified that Dodson had accidentally called Lowder from the truck on her cellular telephone and that, upon answering this call, Lowder overheard Dodson performing oral sex on Malone.

Outside the Applegate residence, Lowder approached the passenger side of his truck, where Malone was seated, and asked, "What the f*** you watching out for?" Malone replied, "What the f*** are you talking about?", and Lowder claimed, "You're out here f***ing around with my old lady." Lowder then drew a handgun from his waistband and struck Malone in the face with it. Malone exited the truck, raised his hands, and backed away before walking off down the street.

At some point during the incident between Lowder and Malone, Lowder's handgun discharged. The bullet struck Dodson in the head, entering through her right eye. At trial, Lowder testified that the gun accidentally fired when he used it to strike Malone in the face. D.A. heard the gunshot from inside the Applegate residence and opened the front door to see Lowder standing at the driver side door of his truck and holding a handgun. Malone was seen standing at the rear of the truck with Dodson inside the bloody truck, slumped down, and not moving. As Malone began to back away from the truck, D.A. heard Lowder ask, "What the f*** do I do now, she's dead?" Lowder then got into his truck and drove away.

---

[1] Although Applegate's son was identified in the direct appeal by his initials due to his age, we will identify him as David Applegate, Jr. ("David Jr.") during the appeal of this PCR proceeding because he is no longer a minor. We will identify his father, David Applegate, Sr. as "David Sr."

Lowder drove to the parking lot of a McDonald's restaurant with Dodson, severely wounded and bleeding, still inside the truck. Lowder testified that he stopped at the restaurant in order to calm his nerves and to compose himself. He then drove Dodson to the emergency room at St. Francis Hospital. Dodson was pronounced dead from a gunshot wound to the head at approximately 5:00 a.m.

At the hospital, Lowder told a security guard that Dodson had been shot at a Marathon gas station. Lowder also placed a telephone call to Dodson's father and gave him the same explanation. Lowder similarly told the responding Indianapolis Metropolitan Police Department ("IMPD") officer, Erin Ri[n]gham, that Dodson had been shot at a gas station. Officer Ringham testified that Lowder "acted more nervous than upset." And another police officer testified that Lowder "seemed calm" and "didn't appear to be . . . overly distraught given the situation."

Lowder was taken to the IMPD homicide office to be interviewed as a witness. During his interview with Detective Kevin Duley, Lowder changed his narrative of the shooting three or four times. First, Lowder maintained that Dodson had been shot at a Marathon gas station by an unknown assailant for an unknown reason. Lowder also initially claimed that he had not been at the Applegate residence that morning and that he drove Dodson directly to the hospital after she was shot. Lowder then claimed that Dodson was murdered at the gas station because she "owed some [drug] money to some Mexicans." Next, Lowder claimed that he had been at the Applegate residence and believed Dodson and Malone were "messing around" in his truck while he was inside. When Lowder confronted Dodson and Malone, the handgun Lowder was brandishing accidentally discharged. At trial, Lowder admitted that he lied to police on multiple occasions and fabricated different accounts of the shooting. Lowder also testified that upon opening the door of the truck, he

saw that Malone's pants were unzipped. However, Malone contends that he and Dodson did not "fool around" while Lowder was inside the Applegate residence.

On December 16, 2010, the State charged Lowder with murder and Class C felony battery. The State later added a charge that Lowder was a habitual offender. After a trial on the charges of murder and battery, a jury convicted Lowder of both crimes. A different jury later found Lowder to be a habitual offender. On March 19, 2012, the trial court sentenced Lowder to fifty-five years for murder, enhanced to eighty-five years by virtue of Lowder's habitual offender status. Lowder was also sentenced consecutively to five years for Class C felony battery, for an aggregate sentence of ninety years.

*Lowder v. State*, No. 49A04-1204-CR-160, slip op. at 1-5 (Ind. Ct. App. Oct. 17, 2012) (citations omitted), *trans. denied*. On appeal, Lowder argued that the evidence was insufficient to support his murder conviction and challenged his sentence as inappropriate. We affirmed the judgment. *Id*. at 5-8.

[4] On June 14, 2013, Lowder filed his pro se petition for PCR, which he subsequently amended on November 30, 2015.[2] Lowder alleged approximately twenty-four instances of ineffective assistance of counsel ("IAC") by Kelly Bauder ("Attorney Bauder"), who represented Lowder during the pretrial period, at Lowder's jury trial, and at Lowder's sentencing. On December 21, 2015, Attorney Jonathan Gotkin entered an appearance on behalf of Lowder in

---

[2] Lowder was represented by counsel at the hearing on the petition for PCR, but he is now proceeding pro se.

the PCR proceeding. Attorney Gotkin represented Lowder at the evidentiary hearing on the petition for PCR on June 14, 2016, and withdrew after the evidentiary hearing.

[5] On December 19, 2016, Lowder, pro se, filed a request to dismiss the petition for PCR without prejudice because Lowder desired to expand the PCR record;[3] on January 13, 2019, the PC Court denied Lowder's request. On January 14, 2019, the PC Court entered findings of fact and conclusions of law denying Lowder's petition for PCR. Lowder now appeals.

## Analysis

[6] Post-conviction proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a conviction and sentence. *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019); Ind. Post-Conviction Rule 1(1)(b). The petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Gibson*, 133 N.E.3d at 681; P-C.R. 1(5). When, as here, the petitioner appeals from a negative judgment denying post-conviction relief, he "must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision." *Gibson*, 133 N.E.3d at 681. When a petitioner fails to meet this "rigorous standard of review," we will affirm the post-conviction court's denial of relief. *Id.* Under

---

[3] The State did not file a response to Lowder's request to withdraw the petition for PCR.

this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Gallien v. State*, 19 N.E.3d 303, 307 (Ind. Ct. App. 2014).

## I.    Alleged IAC

Lowder argues that Attorney Bauder rendered ineffective assistance of counsel; Lowder also alleges that the cumulative effect of Attorney Bauder's individual failures constituted IAC.  To prevail on a claim of IAC, a petitioner must demonstrate that: (1) his or her counsel's performance was deficient, and (2) the petitioner was prejudiced by the deficient performance.  *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *reh'g denied*, *cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001).

An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. Ct. App. 2012), *trans denied*.  A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*.  "[A] defendant must offer strong and convincing evidence to overcome this presumption."  *Id.* Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute IAC.  *Id.*

To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Davis v. State,* 139 N.E.3d 246, 261 (Ind. Ct. App. 2019). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Barber v. State,* 141 N.E.3d 35, 42 (Ind. Ct. App. 2020). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Davis,* 139 N.E.3d at 261.

### A. Failure to Investigate Mitigating Facts and Witnesses

Lowder argues that Attorney Bauder rendered IAC by failing to investigate mitigating facts and witnesses. Lowder argues specifically that Attorney Bauder failed to adequately investigate Troy Malone and should have discovered that Malone lied in his statements to the police and at trial.

When deciding a claim for failure to investigate, we apply a great deal of deference to counsel's judgments. *McKnight v. State,* 1 N.E.3d 193, 201 (Ind. Ct. App. 2013). Establishing failure to investigate as a ground for IAC requires going beyond the trial record to show what an investigation, if undertaken, would have produced. *Id.* "This is necessary because success on the prejudice prong of an IAC claim requires a showing of a reasonable probability affecting the result." *Id.*

[12] By way of background, we note that, at Lowder's jury trial, Malone testified that: he did not "fool around" with Dodson; Lowder accused him of doing so; Lowder was the initial aggressor of the violence; without provocation, Lowder struck Malone in the head with a gun; and Malone stumbled away from the scene, did not hear the gunshot, and did not see Dodson wounded. Prior Case Tr. Vol. I p. 60. Malone was subject to cross-examination by Attorney Bauder.

[13] At the evidentiary hearing, Attorney Bauder testified that she investigated the scene and persons identified by Lowder, spoke with witnesses, and reviewed the State's discovery, including the various witnesses' statements to the police. She then decided to: (1) rely on the various witnesses' statements to the police, rather than on depositions, to avoid the potential adverse impact on Lowder's defense from depositions introduced in lieu of trial testimony, if any of the witnesses failed to appear for trial; and (2) refrain from calling any witness to testify that could harm Lowder's defense.

[14] As to Malone, Attorney Bauder testified further that she: (1) investigated, left voicemail messages for, and spoke with Malone on the phone;[4] (2) elected not to take Malone's deposition; (3) found Malone to be "pretty flaky every time [she] talked to him"; and (4) believed, "given his background[,] . . . there was a chance [Malone] may not show [up at trial]." PCR Tr. Vol. p. 12. Also at the evidentiary PCR hearing, Malone testified that he lied to the police; he lied

---

[4] Malone denies ever speaking with Attorney Bauder.

during the jury trial;[5] and he believed he would "not" have told the truth on the witness stand but "can't say for sure."[6] *Id.* at 65.

[15] The foregoing strategic decisions taken by Attorney Bauder are afforded considerable deference and do not give rise to IAC. Counsel need not be clairvoyant to be deemed effective. The record reveals that Attorney Bauder: (1) took at face value Malone's two statements to police, which Malone later contended were false; (2) assessed Malone's remarks to David Jr. and Virginia Applegate, which Malone later contended were false; and (3) made the strategic decision not to treat Malone as a mitigating witness for fear that he would harm the defense. Given Malone's testimony at the hearing on the petition for PCR that he could not be sure that he would have testified truthfully even if Attorney Bauder had investigated him differently, Lowder cannot show that Malone

---

[5] At the PCR hearing, Malone testified that, on the night of the incident, he made unwanted advances to Dodson, who accidentally dialed Lowder's phone; Lowder appeared and caught Malone groping Dodson; Malone tried and failed to hit Lowder; and Lowder struck Malone with the gun, which discharged and fatally struck Dodson. Malone testified further that: (1) he traded voicemails with Attorney Bauder but never spoke with her; (2) he lied to the police because he was on probation, subject to a ten-year suspended sentence, and "didn't want to get in any trouble"; (3) he also lied because "[he] was messin[g] around with [Dodson] . . . [and] didn't really feel comfortable in sayin[g] that in front of [his] wife"; and (4) he lied to Virginia Applegate, David Jr., and Malone's brother about the incident. PCR Tr. Vol. pp. 56-57, 64.

[6] The PC Court admitted into evidence Malone's affidavit regarding the shooting, which provided:

> [ ] Had I been contacted by Lowder's defense counsel and told that this approach [of lying] could only hurt Lowder, I would have told the truth that: (1) Lowder acted in defense of [Dodson] first when she called him on the phone for help. (2) Lowder then acted in self defense, when I moved to attack Lowder for catching me, by hitting me with a gun which discharged and accidentally hit [Dodson] . . . .

PCR Exhibits Vol. p. 24.

would have benefited the defense. Lowder has not overcome the presumption that Attorney Bauder rendered adequate assistance and exercised reasonable professional judgment in her investigation and assessment of mitigating facts and witnesses. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001). Nor has Lowder demonstrated how he was prejudiced by the alleged failure of Attorney Bauder to investigate. The PC Court did not clearly err in this regard.

### B. Failure to Take Depositions

[16] Lowder argues that Attorney Bauder rendered IAC by failing to take witness depositions. At the evidentiary hearing, Attorney Bauder testified that: (1) she "do[es]n't believe" she took witness depositions of the persons named in Lowder's petition for PCR; (2) she "had statements from these witnesses" and "knew what these witnesses [would] say . . . so [she] felt [she] was prepared"; (3) "[she] was "pretty reluctant to do [depositions] because depositions can be used in lieu of actual testimony at trial if the person [ ] disappears [or] doesn't show for any number of reasons"; and (4) "[she] didn't want to do anything that could be [ ] used against" Lowder. PCR Tr. pp. 7, 8, 9.

[17] Lowder has not overcome the strong presumption that Attorney Bauder rendered adequate assistance and exercised reasonable professional judgment in forgoing witness depositions. *See McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) ("Few points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance."); *see also Young*, 746 N.E.2d at 927. Nor has Lowder shown how he was prejudiced by

Attorney Bauder's failure to take witness depositions. The PC Court's findings and conclusions were not clearly erroneous in this regard.

### C. Failure to Call Witnesses to Testify

[18] Lowder argues that Attorney Bauder rendered IAC by failing to call certain persons to testify at his jury trial. "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998) (citation omitted); *see Young*, 746 N.E.2d at 927 (holding counsel's strategic decisions are afforded considerable deference and do not give rise to IAC). We will not find counsel ineffective for failure to call a particular witness absent a clear showing of prejudice. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001). Moreover, when an IAC claim alleges the failure to present witnesses, the petitioner must offer evidence as to who the witnesses were and what their testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998), *cert. denied*, 525 U.S. 1023 (1998).

### 1. Wayne Adams and Tammy Lowder

[19] Lowder alleges IAC from Attorney Bauder's failure to call Wayne Adams and Tammy Lowder to testify at trial. Lowder presented no evidence whatsoever regarding the contents of these individuals' testimony and, therefore, cannot make a clear showing of prejudice. *See Lee*, 694 N.E.2d at 722. The PC Court's findings and conclusions are not clearly erroneous in this regard.

## 2. David Sr.

Lowder alleges IAC from Attorney Bauder's failure to call David Sr. to testify at trial. At the evidentiary hearing, Attorney Bauder testified that she did not call David Sr. to testify because she knew the likely gist of his trial testimony from his statement to the police.

The jury trial record reveals that David Sr. did not testify for the State. At the PCR hearing, Lowder presented no evidence as to what the contents of David Sr.'s testimony would have been or how David Sr. would have benefited the defense.[7] Lowder, therefore, cannot make a clear showing of prejudice. *See Lee*, 694 N.E.2d at 722. The PC Court's findings and conclusions are not clearly erroneous in this regard.

## D. Failure to File Motion to Suppress Statement

Next, Lowder argues that Attorney Bauder rendered IAC by failing to file a motion to suppress Lowder's statement to the police because Lowder was sleepy and intoxicated at the time of the interview. To prevail on an ineffective assistance of counsel claim based on counsel's failure to file motions, Lowder must demonstrate a reasonable probability that the motion would have been granted. *Talley v. State*, 51 N.E.3d 300, 303 (Ind. Ct. App. 2016), *trans. denied*.

---

[7] At the evidentiary hearing, Lowder introduced into evidence Detective Schemenaur's notes from David Sr.'s interview. David Sr.'s statement was extremely damaging to Lowder and corroborated the statements of David Jr. and Virginia Applegate. *See* PCR Exhibits Vol. p. 17.

[23] "The admissibility of a confession is controlled by determining from the totality of the circumstances whether the confession was made voluntarily and was not induced by violence, threats, or other improper influences that overcame the defendant's free will." *Carter v. State*, 730 N.E.2d 155, 157 (Ind. 2000). Our Supreme Court has held that it is "only when an accused is so intoxicated that he is unconscious as to what he is saying that his confession will be inadmissible." *Id.* "Intoxication of a lesser degree goes only to the weight to be given to the statement and not its admissibility." *Id.*

[24] In *Treadway v. State*, 924 N.E.2d 621, 635 (Ind. 2010), the defendant argued that his statement to the police was involuntary because he was tired and intoxicated during the interview. Our Supreme Court opined:

> It is true that intoxication and lack of sleep may be factors in determining voluntariness. But these factors are not sufficient of themselves. Instead they are included in the totality of the circumstances that a trial court considers in ruling on whether to admit a statement. . . . [A]t the time Treadway gave his statement he was cogent and lucid. Also, he had not consumed any drugs or alcohol for at least six hours. There was no evidence of threats, violence, promises, or use of improper influences. . . .[T]he trial court did not err in allowing the statement into evidence.

*Id*. (citations omitted).

[25] Our review reveals that the start of Lowder's interview was delayed, and Lowder was asleep when the detectives were ready to speak with him. Detective Duley woke Lowder and asked Lowder to confirm the spelling of his

name, his date of birth, and his Social Security number, which Lowder did accurately. Detective Duley read the constitutional rights advisements, which Lowder verbally acknowledged and signed. Occasionally, the detectives restated questions and asked if Lowder was paying attention. Lowder replied, "I'm with you" and answered, "Yes sir" to the detectives' questions. Exhibit 41 pp. 3, 4-6, 9-16. Lowder verbally acknowledged that he was not threatened, coerced, or otherwise influenced regarding his statement to the police.

[26] At the evidentiary hearing on the petition for PCR, Attorney Bauder testified that: (1) she believed Lowder "was asleep [ ] on the tape," and Lowder claimed "he took some kind of drugs"; (2) in her view, Lowder's statement was neither involuntary nor coerced; and (3) she saw no "legal basis in which to" suppress the statement. PCR Tr. Vol. I pp. 20, 21.

[27] Lowder has failed to demonstrate that a motion to suppress would have been granted if Attorney Bauder had filed one. Although Lowder was tired and allegedly intoxicated during the interview, like the defendant in *Treadway*, Lowder was responsive, "cogent and lucid" when he: (1) acknowledged the advisements; (2) answered questions, including correctly verifying his identifying information; (3) denied that he spoke to the police under threat, coercion, or undue influence; (4) expressed hope that Dodson would survive; and (5) spun a false narrative before confessing his role in Dodson's death. *See id*.

[28] We conclude that, had Attorney Bauder filed a motion to suppress the statement, the trial court would have found, under the totality of the circumstances, that Lowder's statement was given voluntarily; was not induced by threats, violence, or undue influence; and Lowder was not "unconscious as to what he [was] saying" when he spoke with the detectives. *See Carter*, 730 N.E.2d at 157. Lowder did not demonstrate that a reasonable probability existed that any motion to suppress his statement would have been successful; thus, the PC Court's findings and conclusions denying this claim are not clearly erroneous.

### E. Failure to Call Expert Witness

[29] Lowder claimed that Attorney Bauder failed to call an expert witness to testify regarding his state of intoxication and the effects thereof on his statement to the police. The PC Court: (1) found that Attorney Bauder "did not believe there was anything to be gained by seeking expert testimony regarding intoxication; (2) found that Lowder failed to include supporting facts in his petition for PCR or in his proposed findings and conclusions; and (3) concluded that Lowder "presented no evidence as to what the testimony of an 'expert prescription doctor' would have been . . . ." PCR App. Vol. III p. 148.

[30] At the evidentiary hearing, Attorney Bauder testified that, during her representation of Lowder, she did not recall believing that retaining an expert witness "[was] somethin[g] that . . . was worthy of pursuing." PCR Tr. Vol. I pp. 46. Also, Lowder presented no evidence as what such testimony would have been or how the retention of such an expert could have aided his defense.

Lowder has, therefore, failed to demonstrate that he was prejudiced by Attorney Bauder's failure to call an expert witness to testify regarding the effects of Lowder's voluntary intoxication on his statement to the police. The PC Court's conclusion is not clearly erroneous in this regard.

### F. Failure to Object and Impeach

[31] Lowder argues that Attorney Bauder rendered IAC by failing to: (1) object to the State's introduction of perjured testimony; and (2) impeach the State's witnesses with prior inconsistent statements to the police. Lowder's arguments pertain to David Jr. and Virginia Applegate ("Virginia"). Lowder maintains that Attorney Bauder's introduction of David Jr.'s and Virginia's prior inconsistent statements would have refuted the State's argument that "Lowder knowingly murdered Dodson." *See* Lowder's Br. p. 10. We begin by summarizing David Jr.'s and Virginia's testimony.

### 1. David Applegate, Jr.

[32] Detective Schemenaur's notes, dated December 13, 2010, provide that David Jr.: "Checked on noise, heard boom, [saw Lowder] by passenger door, [Malone] walking backward, saw [Lowder] with gun, 'What do I do now, she's dead!', Got in truck and left." PCR Exhibits Vol. p. 17.

[33] At trial, fourteen-year-old David Jr. testified as follows: on the night of the incident, during Lowder's visit to the Applegates' home, Lowder's demeanor changed due to something related to Lowder's cell phone; Lowder exited the Applegates' house; David Jr. went to the front of the house to investigate and

heard a gunshot; David Jr. then opened the house door and saw Lowder looking inside his vehicle where Dodson was slumped inside; Lowder's arms were outstretched, and David Jr. saw something in Lowder's hand; Lowder pointed the object at Malone, who was bleeding from his head and "walking backward with his arms out"; Lowder said, "What the f*** do I do [ ]now, she's dead"; Lowder drove away; and David Jr. went into the house and told his parents: "I think [Lowder] just shot [Dodson]."  Prior Case Tr. Vol. I p. 96. On cross-examination, Attorney Bauder elicited testimony from David Jr. that, because he heard the gunshot before he opened the door and went outside, he did not know what transpired outside before he opened the door.

### 2. Virginia Applegate

[34]     Detective Schemenaur's notes provide that Virginia: "Heard noise, looked out and saw [Lowder].  [Dodson] got out of driver's seat and got in passenger, Heard loud boom, Saw [Lowder], [Malone was] walking backwards with hands out, Looked like [they were] arguing, [David Jr.] said, 'hey what's going on?' Saw [Lowder] go south in truck [ ], [Malone] went north on foot."  PCR Exhibits Vol. p. 18.

[35]     At trial, Virginia testified as follows: after Lowder exited her house on the night of the incident, Virginia heard a sound and looked out a window to investigate, then joined David Jr. in looking outside the front door.  She saw Malone backing away from Lowder's vehicle, and David Jr. shared his impression of what he witnessed.  Virginia and David Jr. got into their vehicle, tracked and

spoke with Malone, and returned home to see a news bulletin regarding a woman who had been shot. Attorney Bauder did not cross-examine Virginia.

### 3. Analysis of Claims

[36] First, we find no support in the record for Lowder's claim that the State knowingly introduced perjured testimony. Moreover, even if Attorney Bauder had objected to the testimony of Virginia and David Jr., the fact remains that credibility determinations are the province of the jury, and the trial court would likely have left the jury to decide which account of the events to believe. *See Miller v. State*, 106 N.E.3d 1067, 1073 (Ind. Ct. App. 2018). We, therefore, cannot say that the trial court would have had no choice but to sustain Lowder's desired objection to the alleged perjured testimony. Lowder's claim fails. The PC Court's conclusions are not clearly erroneous in this regard.

[37] As for Attorney Bauder's failure to impeach Virginia and David Jr. with alleged prior inconsistent statements, we note that "[t]he method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010); *see also McCary*, 761 N.E.2d at 392 ("Few points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance."). It was within Attorney Bauder's discretion to consider the effect of putting what she deemed to be minor prior inconsistent statements before the jury and to refrain from questioning the Applegates about the same. Such is especially true here because: (1) Attorney Bauder elicited David Jr.'s testimony on cross-examination that he did not observe the shooting

and, therefore, could not testify that Lowder knowingly murdered Dodson; and (2) Lowder's defense already contemplated conceding that Lowder's actions caused Dodson's death.[8]  Moreover, Lowder has not presented evidence as to how he was prejudiced by Attorney Bauder's cross-examination.  Thus, Lowder's claim fails.  The PC court's findings and conclusions are not clearly erroneous.

## G. Failure to Rehabilitate Error

[38] Lowder argues that: (1) Attorney Bauder rendered IAC by her failure to review the State's redacted version of Lowder's statement to police; (2) the redacted statement misled jurors regarding Lowder's criminal history; and (3) Attorney Bauder failed to rehabilitate the error.

[39] The jury trial record reveals that, during the testimony of Detective Duley, the State introduced Lowder's video-recorded statement to the police, which was redacted by agreement of the parties.  Because the audio quality was poor, the State introduced a transcript of Lowder's statement as a demonstrative aid.  The trial court admonished the jury:

> if you notice something different -- if you hear a difference
> between what is on the [ ] CD and what you read, the actual
> evidence is what's on the CD and [ ] that's what you're to assume
> is your evidence.  [ ]  So the actual evidence is what you hear. . . .

---

[8] Attorney Bauder likely also considered the optics of challenging a teen-aged witness on the stand.

Prior Case Tr. Vol. II p. 21.

[40]     Counsel for the State and Attorney Bauder discovered, mid-trial, that the State did not make all the agreed redactions to the transcript.[9] As a result, the following passage remained in the transcript of Lowder's statement:

> . . . I [ ] hear what's going on [between Malone and Dodson], I come outside [to the] side of the truck . . . . And I hear [Dodson] saying keep watching for him . . . . So I f****** slide down the side of the black truck . . . and I'm going to bust them in the act . . . . Supposed to be one of my good buddies. I opened the door and I'm like man what the f*** man? What the f***? And [Dodson] she just . . . didn't say nothing [sic]. [Malone] was like well I don't know what we going to do now? When [Malone] went like that[,] I went like that . . . and shoved [the gun] away[10] 'cause it was unexpected . . . and the gun went off and . . . [Malone] jumps out of the truck and he was like well what do we do? [ ] I was like man I don't . . . [*Malone*] *was like well I don't know nothing and I ain't seen nothing . . . . And you know . . . I did ten years for murder* and I'm thinking man are you going to shoot me next or what? So I jumped in the truck and took off.

Prior Case Exhibit 41 Vol. p. 54 (emphasis added). Although the above-italicized language reflected Lowder's recounting of Malone's remarks, the transcript gave the impression that Lowder had a prior murder conviction.[11]

---

[9] Counsel for the State advised the trial court that the video-recording was properly redacted.

[10] In this version of Lowder's account of the events, the gun belonged to Malone.

[11] Malone, not Lowder, served a ten-year sentence for voluntary manslaughter. At the outset of the trial, the trial court granted the State's motion in limine to exclude Malone's conviction.

[41]     Once the error came to light, Attorney Bauder argued:

> . . . [A]s you read [the transcript], I understand that it's [Lowder]
> explaining what [Malone] is saying but I think if we just let it go
> it [ ] perhaps could leave a false impression with the jury that this
> is a quote from [Lowder] . . . . I mean, [the jury has] seen it. I
> don't want them to be left with any impression that he has a
> murder conviction because he doesn't. [ ] . . . I understand you
> admonished them that this was just demonstrative but they paid
> an awful lot of attention to it and I think it leaves a very bad
> impression with them . . . .

Prior Case Tr. Vol. II p. 51.

[42]     The State argued that: (1) both sides failed to identify the redaction error; (2) the State "underst[ood] that the Court needs to rehabilitate [the error] . . . to make sure that it's clear that something [Attorney] Bauder believed [was] redacted doesn't imply [Lowder] has a conviction for murder"; and (3) the redactions were made mid-trial, and the State provided Attorney Bauder with a copy of the transcript as soon as the State could. *Id*. at 52. Attorney Bauder argued:

> Today's Tuesday. I received a redaction . . . Friday from the
> State and I was only handed this prior to it . . . being handed to
> the jury and I asked[ ], . . . is this [ ] the final and [the prosecutor]
> handed me this one. So I didn't have time to read through sixty-
> two pages prior to it being read to the Court.

*Id*. at 55-56; *see also id*. at 61 (Attorney Bauder's remarks to the trial court: ". . . I should have just asked for it in advance; and that's my fault and I'll take the heat for that when that time comes").

[43] The trial court expressed frustration with counsels' oversight and ruled that Attorney Bauder could rehabilitate the error by eliciting the witness' testimony that Malone had a prior manslaughter conviction. Accordingly, Attorney Bauder and the State each elicited Detective Duley's testimony that the ten-year sentence reference in the transcript pertained to Malone, not Lowder.

[44] Before admitting the transcript, the trial court admonished the jury that the video-recording of Lowder's statement, *and not the transcript*, constituted evidence and that discrepancies between the two should be resolved in favor of the video-recording. On discovery of the redaction errors, the trial court permitted Attorney Bauder to rehabilitate the error, and both counsels elicited clarifying testimony. In light of these efforts, it is unlikely that the jury attributed the ten-year incarceration to Lowder, and Lowder has not shown he was prejudiced by counsel's actions. Although the best practice would have been for Attorney Bauder to ensure that the State properly redacted the demonstrative aid, given the testimony that the sentence pertained to Malone rather than Lowder, Lowder has not shown he was prejudiced by counsel's failure to do so. *See Gibson*, 133 N.E.3d at 682 ("isolated mistakes, poor strategy, or bad tactics do not necessarily constitute [IAC]."). Thus, the PC court's findings and conclusions are not clearly erroneous in this regard.

### H. Failure to Introduce Lowder's Jailhouse Calls in Entirety

[45] Lowder next argues that, after the State introduced Lowder's redacted jailhouse phone calls into evidence, Attorney Bauder rendered IAC by her failure to introduce the calls in their entirety, pursuant to the doctrine of completeness.

Indiana Evidence Rule 106 provides that: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). This rule may be used to admit omitted portions of a statement in order to: (1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) ensure a fair trial and impartial understanding of the admitted portion. *Hawkins v. State,* 884 N.E.2d 939, 947 (Ind. Ct. App. 2008).

[46] At the evidentiary PCR hearing, Attorney Bauder testified that: (1) she cautioned Lowder and his family that the State was monitoring and recording Lowder's jailhouse calls; (2) the State played portions of the recorded calls for the jury; (3) Attorney Bauder and the State "[reached] an agreement about [ ] what [portion] of the jailhouse calls would be redacted and not"; (4) "[t]here were things that were not favorable for both sides on the calls" and the parties agreed on redactions; and (5) Attorney Bauder did not seek, pursuant to Evidence Rule 106, to play the entirety of the jailhouse calls for the jury because the calls "didn't . . . help[ ]" Lowder "in any way[.]" PCR Tr. Vol. I pp. 26, 27.

[47] Counsel is afforded considerable discretion in choosing strategy and tactics, such as Attorney Bauder's decision not to invoke Evidence Rule 106; we accord those decisions deference. *See Young*, 746 N.E.2d at 927. Lowder has not overcome the strong presumption that Attorney Bauder rendered adequate assistance and exercised reasonable professional judgment in declining to introduce evidence harmful to Lowder's case. Lowder does not assert that any

of the jailhouse calls contained information beneficial to his defense; nor does Lowder explicitly state the nature of the allegedly mitigating content. Lowder has not demonstrated how he was prejudiced by Attorney Bauder's failure to introduce the recorded calls in their entirety. The PC court's findings and conclusions are not clearly erroneous in this regard.

### I. Failure to Pursue Theory of Self-Defense

[48] Lowder argues that Attorney Bauder rendered IAC by her failure to pursue a theory of self-defense. The choice of defenses for trial is a matter of trial strategy, which we will not second-guess unless it is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Overstreet v. State,* 877 N.E.2d 144, 154 (Ind. 2007). This is even true when the strategic choices made ultimately prove detrimental or worthy of criticism. *Wrinkles v. State,* 749 N.E.2d 1179, 1195 (Ind. 2001).

[49] A valid claim of self-defense is a legal justification for an otherwise criminal act. Ind. Code. § 35-41-3-2(a) (2010). To prevail on such a claim, the defendant must show he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Pinkston v. State,* 821 N.E.2d 830 (Ind. Ct. App. 2004), *trans. denied.* The amount of force that an individual may use to protect himself must be proportionate to the urgency of the situation. *Id.* When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.*

[50] There was no evidence presented at Lowder's jury trial that he acted without fault or in reasonable fear of great bodily harm. At the evidentiary hearing, Lowder testified as follows: "when I went out there and caught Troy Malone messin around with . . . Angela Dotson [sic]—when I opened the door he knewed [sic] he got caught. Well, he come at me and kind of got aggressive with me"; "I've known him my whole life you know what I'm sayin—I know his reputation, you know what I mean so I was kind of intimidated—you see—I mean, he's a bigger guy than me, you know what I'm sayin so I didn't know what was gonna transpire so I felt I had a right to defend myself"; and "I smacked him with the pistol and it went off and shot Angela sittin next to him." PCR Tr. Vol. pp. 83-84. Lowder presented Malone's affidavit which provided that Malone "turned to strike Lowder[,]" "fumbled and missed[,]" and "Lowder stepped to the side and struck [Malone] in the eye with the butt of a gun that discharged upon impact with [Malone's] skull and accidentally shot [Dodson, who was] sitting behind [Malone]. . . ." PCR Exhibits Vol. p. 23.

[51] This testimony, even if believed, does not conclusively establish a viable claim of self-defense. Even if Malone testified consistently with the testimony he gave at the hearing on the petition for PCR, it is questionable that Lowder could have prevailed in relying on a claim of self-defense at trial. Under the circumstances outlined by Malone, Lowder faced no real danger from Malone,

whose drunken fisticuffs had reportedly "fumbled and missed[,]" when Lowder struck Malone with the loaded handgun.[12]  *See id*.

[52]  The record reveals that, to Attorney Bauder's knowledge, Virginia's and David Jr's. statements to the police indicated that Lowder was the initial aggressor of the violence that resulted in Dodson's death.  At trial, Attorney Bauder conceded that Lowder committed reckless homicide and presented supporting evidence and argument thereon.  Allowing Lowder to proceed on an alternative theory that he acted in self-defense was not, in Attorney Bauder's view, supported by the evidence.  Attorney Bauder's tactical decision to forgo pursuing a theory of self-defense is entitled to considerable deference.  *See Overstreet*, 877 N.E.2d at 154.  Moreover, even if trial counsel had presented a claim of self-defense, Lowder has not established a reasonable probability that the result of the proceeding would have been different.  In light of the lack of prejudice, Lowder's claim of ineffective assistance of trial counsel fails.  The PC Court did not clearly err here.

---

[12] Indiana Code Section 35-41-3-2 (2010) provided:

> A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.  No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

## *J. Lesser-Included Offense*

[53]     Lowder alleges IAC from Attorney Bauder's concession of Lowder's guilt to reckless homicide and battery during the jury trial. At the evidentiary hearing, Attorney Bauder testified that: (1) she would have discussed any concessions of guilt with Lowder and proceeded only with his approval; (2) she and Lowder "talked about offering the reckless homicide [defense]" and "thought [such] was the best way to handle the case"; and (3) she told the jury that Lowder was guilty of a Class C felony battery on Malone because the defense "went for . . . any opportunity to not get a murder conviction[.]" PCR Tr. Vol. pp. 31, 47. Attorney Bauder's concession of Lowder's guilt to a lesser-included offense was a strategic decision and subject to due deference, which does not support a claim of IAC. *See Humphrey*, 73 N.E.3d at 683. The PC Court did not clearly err here.

## *K. Sentencing*

[54]     Lowder argues that Attorney Bauder rendered IAC by failing to elicit mitigating testimony from his siblings, Glema Cash and Theodore Lowder, at his sentencing hearing. Lowder's siblings testified at the sentencing hearing; however, neither sibling raised Lowder's history of childhood abuse, drug addiction, or alcoholism before the trial court. At the evidentiary PCR hearing, Attorney Bauder testified that "if [she] had" mitigating evidence, she "presented it[.]" PCR Tr. Vol. I p. 36. Lowder's siblings testified at the PCR hearing that they did not reveal Lowder's history to Attorney Bauder during Bauder's representation of Lowder. Absent a showing that Attorney Bauder was ever

made aware of Lowder's history, the PC Court did not clearly err in concluding that Attorney Bauder did not commit IAC in this regard.

### *L. Cumulative Effect*

[55] Based on the foregoing, the PC Court did not clearly err in concluding that the cumulative effect of Attorney Bauder's alleged errors did not constitute IAC.

### II. *Request to Withdraw Petition for PCR*

[56] Lastly, Lowder argues that the PC Court abused its discretion in denying his request to withdraw his petition for PCR without prejudice where "[t]he State failed to respond to th[e] [request] and show how the[ ] [State] would be prejudiced"; and "[t]he PCR Court had not made a final judgment . . . ." Lowder's Br. p. 27.

[57] A post-conviction court's denial of a request to withdraw a petition for PCR is reviewed under an abuse of discretion standard. *Tucker v. State*, 786 N.E.2d 710, 712 (Ind. 2003). We will disturb a trial court's exercise of its discretion "only when the court reached an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." *Tapia v. State,* 753 N.E.2d 581, 585 (Ind. 2001). "[W]hile prejudice to the non-moving party is one relevant indicator, 'it is not a proxy for the post-conviction court's discretion[ .]'" *Id.* at 585-86.

[58] PCR Rule 1(4)(c) provides:

At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

[59] The record reveals that the evidentiary hearing on Lowder's petition for PCR was conducted on June 14, 2016. Six months later, on December 19, 2016, Lowder sought to withdraw his petition for PCR without prejudice. Lowder maintains that he sought to "expand the record[,]" "[to] produce the evidence that PCR counsel Jonathan Gotkin failed to get admitted into evidence at the PCR hearing"; to produce evidence that Attorney Bauder "never" introduced into evidence at trial; and to "call[ ] in additional witnesses to support the IAC claims he raised. *See* Lowder's Br. at 29.

[60] Given: (1) the time and resources that the PC Court expended regarding Lowder's evidentiary hearing; (2) the preparation efforts of trial and PCR counsel; (3) and the inconvenience to the testifying witnesses, we cannot say that the PC Court's denial of Lowder's request to withdraw his petition for PCR six months *after* the evidentiary hearing was conducted was clearly against the logic and effect of the facts and circumstances before the PC Court. *See Tinker v. State*, 805 N.E.2d 1284, 1289 (Ind. Ct. App. 2004) (affirming denial, with prejudice, of Tinker's motion to withdraw his second petition for PCR where, after five continuances, Tinker was unprepared to proceed at the evidentiary hearing, and holding "it may reasonably be inferred that the court and the State would suffer the costs of wasted time and preparation if Tinker were again

allowed to withdraw his petition without prejudice"). The PC Court did not abuse its discretion by denying Lowder's request to withdraw his petition for PCR six months after the evidentiary hearing thereon.

# Conclusion

The PC Court did not clearly err in denying Lowder's petition for PCR and Lowder's request to dismiss his petition for PCR without prejudice. We affirm.

Affirmed.

Riley, J., and Mathias, J., concur.